No. 26-7303

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, *et al.,*
*Plaintiffs-Appellees*,

v.

DOJ - UNITED STATES DEPARTMENT OF JUSTICE, *et al.*,
*Defendants-Appellants*.

**On Appeal from the United States District Court**
**for the Northern District of California**
No. 3:26-cv-12800
The Honorable Trina L. Thompson

---

# BRIEF OF BIPARTISAN FORMER ELECTION OFFICIALS AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES

---

Maithreyi Ratakonda
Max Jordan Kober
STATES UNITED DEMOCRACY CENTER
45 Main Street, Suite 320
Brooklyn, NY 11201

Christine P. Sun
STATES UNITED DEMOCRACY CENTER
95 Third Street, 2nd Floor
San Francisco, CA 94103

Bonnie I. Robin-Vergeer
*Counsel of Record*
STATES UNITED DEMOCRACY CENTER
1101 17th Street NW, Suite 250
Washington, DC 20036
(202) 999-9305
bonnie@statesunited.org

*Counsel for* Amici Curiae *Bipartisan Former Election Officials*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ... ii

INTEREST OF *AMICI CURIAE* ... 1

INTRODUCTION ... 2

ARGUMENT ... 3

I. State and Local Election Officials Face Extreme and Unprecedented Threats from Federal Officials. ... 3

II. DOJ Demands Actions that Likely Would Violate State and Federal Laws. ... 12

III. The Administration's Demands Must Be Understood Against the Backdrop of Heightened Threats to Election Officials' Safety and Security. ... 17

CONCLUSION ... 21

ADDENDUM ... A-1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*California v. Trump*,
840 F. Supp. 3d 37 (D. Mass. 2026) .......... 4

*Democratic Nat'l Comm. v. Wis. State Legislature*,
592 U.S. 1039 (2020) .......... 12

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*,
489 U.S. 214 (1989) .......... 12

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
818 F. Supp. 3d 34 (D.D.C. 2026) .......... 4

*Merrill v. Milligan*,
142 S. Ct. 879 (2022) .......... 12

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) .......... 12

*United States v. California*,
2026 WL 3252428 (C.D. Cal. Oct. 28, 2026) .......... 8, 10, 15, 16

*United States v. Henderson*,
2026 WL 3181405 (D. Utah Oct. 23, 2026) .......... 5

*Washington v. Trump*,
814 F. Supp. 3d 1173 (W.D. Wash. 2026) .......... 4

## Statutes

*Federal*

52 U.S.C. § 20507 .......... 15

*State*

N.C. Gen. Stat. 163-89 .......... 14

25 Pa. Cons. Stat.
§ 1329 ....................14
§ 3146.2b ....................15
§ 3146.8 ....................15
§ 3150.12b ....................15

Ariz. Rev. Stat. § 16-552 ....................14

N.C. Gen. Stat.
§ 163-85 ....................14
§ 163-89 ....................14

**Other Authorities**

*Federal*

U.S. Dep't of Just., *Justice Manual* (2022)
§ 9-85.300 ....................11
§ 9-85.500 ....................11

Exec. Order No. 14248, *Preserving and Protecting the Integrity of American Elections*, 90 Fed. Reg. 14005 (2025) ....................4

Exec. Order No. 14399, *Ensuring Citizenship Verification and Integrity in Federal Elections*, 91 Fed. Reg. 17125 (2026) ....................6

Richard C. Pilger et al., *Federal Prosecution of Election Offenses*, DOJ (8th Ed. 2017), https://www.govinfo.gov/content/pkg/GOVPUB-J-PURL-gpo145659/pdf/GOVPUB-J-PURL-gpo145659.pdf ....................11

*State*

Ariz. Dep't of State, *State of Arizona 2025 Election Procedures Manual* (Dec. 22, 2025), https://apps.azsos.gov/election/files/epm/2025/Election-Procedures-Manual-2025--FINAL-12-22-25.pdf....................14

N.C. State Bd. of Elections, *Voter Challenge Procedures Guide* (updated Dec. 18, 2023), https://s3.amazonaws.com/dl.ncsbe.gov/Legal/Voter%20Challenge%20Guide.pdf....................15

*Miscellaneous*

Barton Gellman, *The State Officials Defending the Midterms from the President*, New Yorker (Oct. 25, 2026), https://archive.ph/XPL4C ....................20

Decl. of Aman Bhullar, *United States v. California*, No. 26-cv-12025 (C.D. Cal.) (Doc. 32-3) ....................16

Bridging Divides Initiative, *Analysis of Threat and Harassment Data for the 2024 Election*, https://bridgingdivides.princeton.edu/analysis-threat-and-harassment-data-2024-election ........................................................18

Christine A. Cassidy, *From Panic Buttons to Bulletproof Glass, U.S. Election Officials Are Preparing for Threats*, Associated Press (Sept. 17, 2024), https://www.pbs.org/newshour/politics/from-panic-buttons-to-bulletproof-glass-u-s-election-officials-are-preparing-for-threats ..................................18

Deidre M. Henderson (@deidrehenderson), Threads (July 7, 2026), https://www.threads.com/@deidrehenderson/post/Daf_6faFINL..................7

*DHS Secretary Markwayne Mullin Sends Letters to Secretaries of State Warning About Non-Citizens on Voter Rolls* (July 17, 2026), https://www.dhs.gov/news/2026/07/17/dhs-secretary-markwayne-mullin-sends-letters-secretaries-state-warning-about-non ..........................................7

Donald J. Trump (@realDonaldTrump), Truth Social (Oct. 16, 2026, 20:28 ET), https://truthsocial.com/@realDonaldTrump/posts/117453415283228242 .....8

Elections & Voting Info. Ctr., *Today's Election Administration Landscape: Findings from the 2024 Elections & Voting Information Center Local Election Official Survey* (Feb. 2025), https://evic.reed.edu/2024-evic-leo-survey-report..............................................................................13

Decl. of Monica Flores, *United States v. California*, No. 26-cv-12025 (C.D. Cal.) (Doc. 32-4) ...................................................16

Hr'g Tr., *United States v. California*, No. 26-cv-12025 (C.D. Cal. Oct. 28, 2026) (Doc. 150).................................9

Jonathan Shorman, *Turnover Among Election Officials Reaches New High, Report Finds*, Statline (Aug. 20, 2025), https://stateline.org/2025/08/20/turnover-among-election-officials-reaches-new-high-report-finds..............................19

Jude Joffe-Block, *Justice Department Issues Subpoenas to California Election Workers*, NPR (Oct. 30, 2026), https://www.npr.org/2026/10/29/nx-s1-6022560/doj-subpoenas-california-election ................................................10

Ltr. from Harmeet K. Dhillon to Mich. Sec'y of State Jocelyn Benson, *Re: The State of Michigan's Compliance with Federal Law Governing Voter Eligibility* (July 7, 2026), https://s3.documentcloud.org/documents/28425163/20260707-doj-letter-and-memo-voter-eligibility.pdf ......................................................6

Ltr. from R. Trent McCotter to Colo. Sec'y of State Jena Griswold, *Re: Obligations under 52 U.S.C. § 20701* (Oct. 29, 2026), https://www.democracydocket.com/wp-content/uploads/2026/10/Jena-Griswold_261029_175852-1.pdf ............ 10

Lucas Waldron & Peter Elkind, *"Devoid of Any Factual Basis": Again and Again, Judges Have Dismissed Trump's Voter Data Lawsuits*, ProPublica (Oct. 16, 2026) ............ 5

NCSL, *Federal Requests for Statewide Voter Lists* (updated Oct. 8, 2026), https://www.ncsl.org/elections-and-campaigns/federal-requests-for-statewide-voter-lists ............ 4

Press Release, DOJ, *Federal Data Shows Hundreds of Non-Citizens Registered to Vote in Washington* (Oct. 26, 2026), https://www.justice.gov/usao-wdwa/pr/federal-data-shows-hundreds-non-citizens-registered-vote-washington ............ 8

Press Release, DOJ, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://www.justice.gov/opa/pr/justice-department-sues-oregon-and-maine-failure-provide-voter-registration-rolls ............ 5

Ruby Edlin & Lawrence Norden, *Survey Finds Election Officials Remain Concerned About Safety, Lack of Government Support*, Brennan Ctr. for Just. (Apr. 13, 2026), https://www.brennancenter.org/our-work/analysis-opinion/survey-finds-election-officials-remain-concerned-about-safety-lack ............ 17

United States Attorneys, *Federal Data Shows Hundreds of Non-Citizens Registered to Vote in Washington* (Youtube Oct. 27, 2026), https://www.youtube.com/watch?v=cVtWGRq4ack ............ 9

Univ. of Md. Election Resilience Lab, *The HR of Democracy: Understanding the Election Workforce* (May 2026), https://cdce.umd.edu/sites/cdce.umd.edu/files/The_HR_of_Democracy-Understanding_the_Election_Workforce.pdf ............ 13

Votebeat, *Suspicious letters sent to election officials nationwide weeks before the midterms* (Oct. 15, 2026), https://www.votebeat.org/national/2026/10/15/suspicious-letters-white-powder-election-officials-threats ............ 18

Wash. Sec'y of State, *Washington Secretary of State Steve Hobbs Response to DOJ Letter About Voter Rolls* (Oct. 28, 2026), https://www.sos.wa.gov/about-office/news/2026/washington-secretary-state-steve-hobbs-response-doj-letter-about-voter-rolls ........................................16

Wren Orey et al., *Election Official Turnover Rates through the 2024 Election*, Bipartisan Pol'y Ctr. (Aug. 19, 2025), https://bipartisanpolicy.org/issue-brief/election-official-turnover-rates-through-the-2024-election..................19

## INTEREST OF *AMICI CURIAE*[1]

*Amici curiae*, listed in the attached Addendum, are former election officials from both major political parties with decades of collective experience overseeing all aspects of election administration in states across the country. *Amici* are intimately familiar with the practical challenges of securing and administering free and fair elections within logistical and legal parameters, as well as the heightened threat environment in which election officials operate. They have spent decades ensuring compliance with federal and state laws.

Given their years of service, *amici* are strongly invested in ensuring that the upcoming election is conducted in a fair and orderly manner. *Amici* write to help this Court understand plaintiffs' intimidation claims in the context of the threats election officials have faced since 2025 and the processes they are charged with carrying out under federal and state law. In *amici*'s view, defendants' demands for election officials to segregate ballots and verify citizenship under the threat of criminal prosecution upend the rules they are responsible for enforcing and unnecessarily risk disenfranchising eligible voters.

[1] No counsel for a party authored this brief in whole or in part. No person other than amici or their counsel made a monetary contribution to this brief's preparation or submission.

## INTRODUCTION

This case is about unnecessary pressures and threats the federal government is placing on state and local election officials simply for carrying out their duties under the law. In the last month alone and as discussed below, President Donald Trump declared that California election officials "will all go to jail for a long period of time"; a federal prosecutor threatened election officials with criminal sanctions in open court, prompting the judge to admonish that threats must cease immediately; and another federal prosecutor threatened election officials with criminal sanctions at a press conference.

These mounting threats against state and local election officials are only the latest in a campaign dating back to early 2025 that is at odds with the laws those officials are required to implement and that aims to undermine trust in election administrators. This campaign—during which the federal government has provided no evidence of widespread error or wrongdoing by election officials—has led to an unprecedented uptick in harassment and threats against election workers at the most critical and busiest time of the election cycle. What is more, federal and state law prohibit the changes that federal officials demand, placing election workers in a bind between potentially violating state and federal law or facing the prosecutorial power of the federal government. We therefore urge the Court to ensure the federal government does not pressure election officials into departing

from settled procedures in the midst of an election, based on fears of threats and prosecution.

## ARGUMENT

### I. State and Local Election Officials Face Extreme and Unprecedented Threats from Federal Officials.

The increased federal pressure and threats on election officials that precipitated this case are part of a pattern by the administration of attempting to assert authority over elections and questioning the integrity of state and local officials. In our collective experience as election officials, we have never seen such a concerted fixation by the federal government on election workers through letters, subpoenas, press conferences, and social media posts, threatening them with imprisonment if they do not accede to certain demands. Through our contacts with those who still are on the front lines, we know these threats create an environment of fear and extreme concern.[2]

1. These efforts began in earnest more than a year ago, in March 2025, when President Trump issued Executive Order No. 14248, *Preserving and*

[2] While we focus on the threats to current election officials, we note that threats by the federal government against former election officials also add to a credible fear by current officials. For example, the current administration has sought names, home addresses, and other identifying information of election officials who worked in Fulton County, Georgia, during the 2020 election. *See Fulton Cnty. Bd. of Registration & Elections v. United States*, 836 F. Supp. 3d 1305, 1308, 1320 (N.D. Ga. 2026) (quashing federal subpoenas).

*Protecting the Integrity of American Elections*, directing the Attorney General to "prioritize enforcement of Federal election integrity laws" and "review [] withholding of grants and other funds" as to state and local officials who "refuse to cooperate in investigations and prosecutions of election crimes." 90 Fed. Reg. 14005, 14008. Three federal district courts have since preliminarily or permanently enjoined key provisions of that Order as unconstitutional. *See California v. Trump*, 840 F. Supp. 3d 37 (D. Mass. 2026), *appeal filed*, No. 26-2038 (1st Cir. Sept. 9, 2026); *League of United Latin Am. Citizens v. Exec. Off. of the President*, 818 F. Supp. 3d 34 (D.D.C. 2026); *Washington v. Trump*, 814 F. Supp. 3d 1173 (W.D. Wash. 2026).

Federal officials have since issued threats of criminal investigation and have initiated waves of litigation against election officials who have been carrying out their responsibilities consistent with well-established federal and state requirements. Throughout 2025, the Department of Justice (DOJ) Civil Rights Division demanded that nearly every state and the District of Columbia transmit their unredacted voter registration lists to the federal government, despite the lack of any basis in law for such a demand. *See* NCSL, *Federal Requests for Statewide Voter Lists* (updated Oct. 8, 2026).[3] When election officials refused to comply,

---

[3] https://www.ncsl.org/elections-and-campaigns/federal-requests-for-statewide-voter-lists.

DOJ sued them. Every federal district court to consider these cases (27 to date) has rejected DOJ's claimed authority and emphasized that the federal government has no right to states' unredacted voter data. Lucas Waldron & Peter Elkind, *"Devoid of Any Factual Basis": Again and Again, Judges Have Dismissed Trump's Voter Data Lawsuits*, ProPublica (Oct. 16, 2026) (identifying 26 dismissals);[4] *United States v. Henderson*, 2026 WL 3181405, at *11 (D. Utah Oct. 23, 2026) (dismissing DOJ action against Utah). Many of these cases are on appeal.

Despite these rejections in court, federal officials continue to use heated rhetoric against election officials who continue to carry out their responsibilities. Assistant Attorney General for Civil Rights Harmeet Dhillon said state officials who declined to hand over voter lists were attempting to "pick and choose which federal laws they will comply with." Press Release, DOJ, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025).[5] The implication that election officials are flouting the law by adhering to settled federal and state interpretations of their duties is inflammatory and unprecedented, and has a significant impact on election officials.

---

[4] https://projects.propublica.org/trump-doj-voter-data-lawsuits.

[5] https://www.justice.gov/opa/pr/justice-department-sues-oregon-and-maine-failure-provide-voter-registration-rolls.

The effort to target election officials has only intensified in the lead-up to the 2026 midterms. In March 2026, President Trump issued Executive Order No. 14399, *Ensuring Citizenship Verification and Integrity in Federal Elections*, aimed at restricting mail voting. The Order again instructed the Attorney General to prioritize the investigation and criminal prosecution of state and local officials. 91 Fed. Reg. 17125, 17126.

Even as state election officials have prevailed in court against these Executive Orders, federal officials have doubled down on their threats. Early in July 2026, Assistant Attorney General Dhillon sent letters to chief election officials in all 50 states and D.C. with language representing a sharp departure from past federal practice. *E.g.*, Ltr. from Harmeet K. Dhillon to Mich. Sec'y of State Jocelyn Benson, *Re: The State of Michigan's Compliance with Federal Law Governing Voter Eligibility* (July 7, 2026).[6] The letter catalogued seven different criminal statutes that, in her view, the Department could use to hold state officials criminally liable, regarding list maintenance. Election officials, such as Utah Lieutenant Governor Deidre Henderson, who oversees elections for the state, understood the threat: "Got another love letter this morning from the DOJ

[6] https://s3.documentcloud.org/documents/28425163/20260707-doj-letter-and-memo-voter-eligibility.pdf.

sprinkled throughout with threats of criminal prosecution," she wrote in a social media post.[7]

By mid-July 2026, Department of Homeland Security (DHS) Secretary Mullin (inaccurately) claimed that DHS had identified hundreds of thousands of possible noncitizens registered to vote across four states, including California. Press Release, DHS, *DHS Secretary Markwayne Mullin Sends Letters to Secretaries of State Warning About Non-Citizens on Voter Rolls* (July 17, 2026).[8] At a press conference he threatened election officials with penalties, including jail time, if they refused his demands. Myah Ward et al., *DHS Secretary Vows Fines—and Even Prison Time—for Election Officials that Don't Comply*, Politico (July 17, 2026).[9] Again, the administration signaled that election officials should either abandon procedures required under federal and state law based on DOJ demands or face federal criminal prosecution.

2. The letters that precipitated this case are a continuation of the federal campaign against election officials. DOJ waited until October 13, 2026—in the

---

[7] Deidre M. Henderson (@deidrehenderson), Threads (July 7, 2026), https://www.threads.com/@deidrehenderson/post/Daf_6faFINL.

[8] https://www.dhs.gov/news/2026/07/17/dhs-secretary-markwayne-mullin-sends-letters-secretaries-state-warning-about-non.

[9] https://www.politico.com/news/2026/07/17/dhs-secretary-vows-fines-and-even-prison-time-for-election-officials-that-dont-comply-01003116.

midst of an election, with mail ballots already having been cast by voters and Election Day only three weeks away—to assert that California had approximately 20,000 registered voters who were "likely noncitizens" and demand that state and county officials review the list "within 48 hours." Compl. ¶ 79 & n.18 (Doc. 1). The President posted the letter on social media, stating that election officials who did not comply "will all go to jail for a long period of time!!!"[10]

Meanwhile, DOJ sent substantially similar demands to Washington's Secretary of State alleging over 400 possible noncitizens and called on election workers to segregate those ballots just eight days before Election Day. Holmes Decl. ¶ 17 (Doc. 19-4); Press Release, DOJ, *Federal Data Shows Hundreds of Non-Citizens Registered to Vote in Washington* (Oct. 26, 2026).[11] That same day, President Trump announced a $1 million reward to anyone who reports voter fraud "upon the arrest and conviction of those that created the Fraud!"[12] Acting U.S. Attorney for the Western District of Washington Neil Floyd held a press conference where he said state officials were "on notice" about potential non-citizen voters and, when asked whether his office would prosecute state election

[10] Donald J. Trump (@realDonaldTrump), Truth Social (Oct. 16, 2026, 20:28 ET), https://truthsocial.com/@realDonaldTrump/posts/117453415283228242.

[11] https://www.justice.gov/usao-wdwa/pr/federal-data-shows-hundreds-non-citizens-registered-vote-washington.

[12] https://truthsocial.com/@realDonaldTrump/posts/117508870323063258.

officials, replied: "Anyone that assists someone in voting illegally would be also guilty of that crime under an aiding and abetting theory." United States Attorneys, *Federal Data Shows Hundreds of Non-Citizens Registered to Vote in Washington*, at 25:12 (Youtube Oct. 27, 2026).[13]

DOJ then delivered another set of letters to California election workers and administrators, threatening them with criminal punishment unless they complied, again within 48 hours. Moreles Decl. ¶ 8 (Doc. 29-1); Connelly Decl. ¶¶ 3-4 (Doc. 29-2); Diaz Decl. ¶ 5 (Doc. 29-5).

On October 27, First Assistant U.S. Attorney for the Central District of California Bill Essayli threatened election administrators with criminal sanctions in open court, declaring that even if officials are "not the ones casting the ballot under aiding and abetting theory of liability . . . they would be criminally liable if they knowingly process a ballot of a non-citizen." Hr'g Tr. at 57, *United States v. California*, No. 26-cv-12025 (C.D. Cal. Oct. 28, 2026) (Doc. 150). The judge was under no illusions about what First Assistant U.S. Attorney Essayli meant, admonishing: "This Court believes it would be wise, that any threats to State and County-elected employees cease immediately." *Id.* at 95.

---

[13] https://www.youtube.com/watch?v=cVtWGRq4ack.

Two days later, DOJ again sent warnings to all 50 states' chief election officials that, as with prior letters, sharply departed from past federal practice in making pointed statements about criminal penalties, this time related to state election officials' federal record-retention obligations. *E.g.*, Ltr. from R. Trent McCotter to Colo. Sec'y of State Jena Griswold, *Re: Obligations under 52 U.S.C. § 20701* (Oct. 29, 2026).[14]

3. Days ago, DOJ issued criminal subpoenas to California election workers in connection with its noncitizen voting allegations, again escalating pressures on officials amid their election-related obligations. Jude Joffe-Block, *Justice Department Issues Subpoenas to California Election Workers*, NPR (Oct. 30, 2026).[15] This, despite the fact that a federal judge warned prosecutors that the threats against California election officials "must stop." *United States v. California*, 2026 WL 3252428, at *4 (C.D. Cal. 2026).

The people running and administering our elections are squarely in the crosshairs of the federal government—facing numerous and escalating threats as Election Day nears. Yet, they cannot simply disregard their duty to administer elections according to settled federal and state law. Complying with federal

[14] https://www.democracydocket.com/wp-content/uploads/2026/10/Jena-Griswold_261029_175852-1.pdf.

[15] https://www.npr.org/2026/10/29/nx-s1-6022560/doj-subpoenas-california-election.

demands that lack a sound legal and factual basis risks upending election procedures and disenfranchising voters.

4. DOJ's threats mark a striking departure from past practice, which makes the demands on state and local officials only that much more unsettling. Until recently, longstanding policy demanded that DOJ assiduously avoid interfering with, or appearing to interfere with, an election—much less disrupting the actual determination and certification of election results. *See* DOJ, *Justice Manual* §§ 9-85.300, 85.500 (2022). And DOJ's internal guidance likewise recognized, until its removal from DOJ's website earlier this year, that "any criminal investigation by the Department must be conducted in a way that minimizes the likelihood that the investigation itself may become a factor in the election." Richard C. Pilger et al., *Federal Prosecution of Election Offenses* 9, DOJ (8th Ed. 2017).[16] Until recent years, our experience was that federal prosecutors and investigators took this policy seriously. Many of us had the opportunity to work directly with DOJ officials with the goal of helping our state and local officials run free, fair, and secure elections. However, the current DOJ's overt efforts to interfere with the conduct of the midterm elections is in stark contrast with prior practice.

---

[16] https://www.govinfo.gov/content/pkg/GOVPUB-J-PURL-gpo145659/pdf/GOVPUB-J-PURL-gpo145659.pdf.

## II. DOJ Demands Actions that Likely Would Violate State and Federal Laws.

Apart from creating an unprecedented threat environment, DOJ's letters and criminal subpoenas, issued amidst an ongoing election, create maximum disruption for state and local election officials at the very time when they are the busiest and the importance of their tasks is at its zenith. By threatening them with criminal penalties for carrying out their responsibilities required by state and federal law, the administration places election officials in an impossible position. Even if the federal government's data were reliable—and there is no evidence that it is—and its demands had a sound legal basis, it would not be feasible for election officials to implement new citizenship verification processes during an ongoing election.

1. "A State indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989). In staying federal court injunctions issued in the run-up to an election, Supreme Court Justices have recognized that "state and local election officials need substantial time to plan for elections. Running elections state-wide is extraordinarily complicated and difficult. Those elections require enormous advance preparations by state and local officials, and pose significant logistical challenges." *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring); *Democratic Nat'l Comm. v. Wis. State Legislature*, 592 U.S. 1039, 1042 (2020) (Gorsuch, J., concurring) ("Last-minute changes to longstanding

election rules risk other problems too, inviting confusion and chaos and eroding public confidence in electoral outcomes.); *see also Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006).

As former election officials, we are well aware of what it takes to run a general election. State and local officials often put in long days testing equipment, training staff, mailing ballots, ensuring sufficient resources and volunteers at each polling site, administering early and Election Day voting, canvassing, auditing, recounting election results (if necessary), and certifying the results—in the weeks leading up to Election Day and the weeks after. According to one report, during peak election season, which can last eight to twelve weeks, election workers in large and middle-sized jurisdictions work a median of 60 hours per week. Elections & Voting Info. Ctr., *Today's Election Administration Landscape: Findings from the 2024 Elections & Voting Information Center Local Election Official Survey* 12-13 (Feb. 2025).[17] Despite the centrality of these responsibilities to maintaining our democratic system, elections offices are frequently seriously under-resourced and understaffed. *See, e.g.*, Univ. of Md. Election Resilience Lab, *The HR of Democracy: Understanding the Election Workforce* (May 2026).[18]

---

[17] https://evic.reed.edu/2024-evic-leo-survey-report.

[18] https://cdce.umd.edu/sites/cdce.umd.edu/files/The_HR_of_Democracy-Understanding_the_Election_Workforce.pdf.

2. Election officials carry out their responsibilities against the backdrop of state and federal law. Threatening them with criminal liability if they decline to segregate the ballots of "likely aliens," Moreles Decl., Ex. A, at 1 (Doc. 29-1), pits election officials' desire to avoid federal sanctions against their obligations to follow state and federal laws for determining when and how to remove registrants from the rolls or otherwise nullify votes.

State laws regulate the process by which a registered voter's eligibility or a ballot may be challenged. These laws often impose evidentiary standards, afford due process, and set deadlines for ineligibility determinations.[19] *See, e.g.*, Ariz. Rev. Stat. § 16-552; Ariz. Dep't of State, *State of Arizona 2025 Election Procedures Manual* 86-88 (Dec. 22, 2025)[20] (challengers must provide "individualized facts" supporting assertion that ballot should not be counted; challenged voters must be notified and given opportunity to appear at a hearing; to disqualify, evidence must be "clear and convincing"); N.C. Gen. Stat. §§ 163-85, 163-89; N.C. State Bd. of Elections, *Voter Challenge Procedures Guide* 9-13

---

[19] For a compliation of voter challenge procedures in all states, *see* National Conference of State Legislatures, *Challenges to Voter Eligibility* (Feb. 19, 2026), https://www.ncsl.org/elections-and-campaigns/challenges-to-voter-eligibility.

[20] https://apps.azsos.gov/election/files/epm/2025/Election-Procedures-Manual-2025--FINAL-12-22-25.pdf.

(updated Dec. 18, 2023)[21] (challengers must file a sworn statement that voter is not properly registered; no challenge shall be sustained unless substantiated by "affirmative proof"); 25 Pa. Cons. Stat. § 1329 (procedure for challenging voters; challenger must file an affidavit individualized to each voter); 25 Pa. Cons. Stat. §§ 3146.2b(c), 3146.8, 3150.12b(a) (deadline and procedure for challenging applications to receive mail ballots; challengers must pay $10 for each voter challenged; challenged voters should be notified and given an opportunity to appear at hearing). Thus far, the federal government has ignored these state law challenge procedures. It has demanded ballot segregation, but state officials who comply with these demands likely would violate the established state laws regarding challenge procedures in doing so.

Federal law, too, guards against rash decision-making that risks voter disenfranchisement. For example, in its Quiet Period provision, the National Voter Registration Act of 1993 prohibits systematic removal of registrants within 90 days of any election for federal office. 52 U.S.C. § 20507(c)(2)(A). Although DOJ claims that its proposed segregation would be "individualized," Moreles Decl., Ex. A, at 3, the district court in *United States v. California* rightly concluded that evaluating and segregating individuals off DOJ's list of 20,000 "likely noncitizens"

---

[21] https://s3.amazonaws.com/dl.ncsbe.gov/Legal/Voter%20Challenge%20Guide.pdf.

would entail "precisely the type of systematic cancellation program that the 90-day Provision was meant to preclude." 2026 WL 3252428, at *10. And such segregation could be tantamount to removing these registrants and canceling their votes, because it would be very difficult for local election officials to verify citizenship in time for their certification deadline. *Id.*

3. For all these reasons, it would be unfeasible for election officials to act on last minute lists of alleged noncitizen voters—especially when there is sparse evidence that the list is accurate. DOJ has failed to satisfactorily explain its methodology for compiling the list. The Department claims to have combined California's voter file with commercially available data and matched those data with immigration records. The reliability of this method is highly suspect: Election officials across jurisdictions report that entries on various DOJ's lists identify people who are not registered to vote, whose registrations were cancelled, or who reported U.S. birthplaces. Bhullar Decl. ¶ 24, *California*, No. 26-cv-12025 (C.D. Cal.) (Doc. 32-3); Flores Decl. ¶ 48, *id.* (Doc. 32-4). And DOJ has refused to supply confidence thresholds, error rates, or benchmark validations for the list, even to justify its demands in court, making a proper verification of the list's reliability impossible. *California*, 2026 WL 3252428, at *12-14. The list sent to Washington State, too, appears to identify U.S. citizens. Wash. Sec'y of State,

*Washington Secretary of State Steve Hobbs Response to DOJ Letter About Voter Rolls* (Oct. 28, 2026).[22]

## III. The Administration's Demands Must Be Understood Against the Backdrop of Heightened Threats to Election Officials' Safety and Security.

The pressures that unwarranted federal demands place on state and local election officials are compounded by the safety threats such officials have increasingly faced since 2020. A recent survey shows that safety concerns among election officials are high. "Since at least 2020, scores of local election officials have been scapegoated by political leaders and others unhappy with election results, resulting in unprecedented attacks." Ruby Edlin & Lawrence Norden, *Survey Finds Election Officials Remain Concerned About Safety, Lack of Government Support*, Brennan Ctr. for Just. (Apr. 13, 2026).[23] Nearly one third of officials said they had been threatened, harassed, or abused; nearly one in four said they are concerned about being assaulted at home or work. Over half reported concern about the safety of their colleagues and staff, and more than half worried that threats, harassment, and intimidation would make it more difficult to retain or recruit election workers. *Id.* Between January 2022 and November 2024, Princeton

---

[22] https://www.sos.wa.gov/about-office/news/2026/washington-secretary-state-steve-hobbs-response-doj-letter-about-voter-rolls.

[23] https://www.brennancenter.org/our-work/analysis-opinion/survey-finds-election-officials-remain-concerned-about-safety-lack.

University's Bridging Divides Initiative (BDI) recorded approximately 170 election-related incidents of threats and/or harassment targeting local officials around the country. BDI, *Analysis of Threat and Harassment Data for the 2024 Election* (last visited Nov. 2, 2026).[24]

The threat environment has spurred expensive security upgrades. For the 2024 election, California's Los Angeles County and Durham County, North Carolina, inaugurated new offices with bulletproof glass, security cameras, and doors that open only with badges. In Durham County, a central feature of the new office was a mail processing room with a separate exhaust system to contain potentially hazardous substances sent in the mail. Christina A. Cassidy, *From Panic Buttons to Bulletproof Glass, U.S. Election Officials Are Preparing for Threats,* Associated Press (Sept. 17, 2024).[25] The risk has not subsided. Just this past month, suspicious mailings were sent to election officials across the country, some containing a powdery white substance. Jessica Huseman & Dion

---

[24] https://bridgingdivides.princeton.edu/analysis-threat-and-harassment-data-2024-election.

[25] https://www.pbs.org/newshour/politics/from-panic-buttons-to-bulletproof-glass-u-s-election-officials-are-preparing-for-threats.

Nissenbaum, *Suspicious Letters Sent to Election Officials Nationwide Weeks Before the Midterms,* Votebeat (Oct. 15, 2026).[26]

Unsurprisingly, turnover of election officials has reached new heights. New research finds that election officials turned over at the highest rate—41%—in at least a quarter century during the 2024 presidential election. Jonathan Shorman, *Turnover Among Election Officials Reaches New High, Report Finds*, Stateline (Aug. 20, 2025).[27] There are a number of explanations, but the factors include "hostility toward election officials." Wren Orey et al., *Election Official Turnover Rates through the 2024 Election,* Bipartisan Pol'y Ctr. (Aug. 19, 2025).[28] The recent dramatic escalation from DOJ, subjecting election officials to threats of criminal prosecution for doing their jobs, is certain to make matters much worse. We know from our conversations with current election officials—many of whom were our colleagues and partners—that DOJ's threats have taken their toll.

We know that threats from the federal government has already and will continue to inflame tensions and likely embolden non-governmental actors to

[26] https://www.votebeat.org/national/2026/10/15/suspicious-letters-white-powder-election-officials-threats.

[27] https://stateline.org/2025/08/20/turnover-among-election-officials-reaches-new-high-report-finds.

[28] https://bipartisanpolicy.org/issue-brief/election-official-turnover-rates-through-the-2024-election.

harass election officials. Indeed, according to press reports, after one current election official resisted the administration's demand to hand over the state's voter rolls, "election conspiracists have deluged her with threats of sexual violence and murder." Barton Gellman, *The State Officials Defending the Midterms from the President*, New Yorker (Oct. 25, 2026).[29] As former election officials, we have seen this pattern play out in the past. Indeed, at various times over the last seven years, as a result of threats stirred up by those seeking to undermine trust in elections, many of us have had to temporarily leave our houses to find safe places to live. Many of us have been swatted or doxed. We have had to seek security details to protect us. We have had to explain these threats to our children.

The pattern we see today exceeds what any of us experienced in the past and creates an unacceptable risk that election officials will cave to constant pressures to abandon governing procedures, yield to the administration's demands, and possibly disenfranchise eligible voters.

[29] https://archive.ph/XPL4C ("It's horrible. Honestly, I've had to have counselling just to function, to deal with the burden of fear that comes from the threats I've been getting," the official said.).

## CONCLUSION

*Amici* respectfully request that this Court ensure that the federal government does not pressure election officials into departing from settled procedures in the midst of an election, based on fears of threats and prosecution.

Dated: November 2, 2026

Respectfully submitted,

*/s/ Bonnie I. Robin-Vergeer*
Bonnie I. Robin-Vergeer
*Counsel of Record*
STATES UNITED DEMOCRACY CENTER
1101 17th Street NW, Suite 250
Washington, DC 20036
(202) 999-9305
bonnie@statesunited.org

Maithreyi Ratakonda
Max Jordan Kober
45 Main Street, Suite 320
Brooklyn, NY 11201
(202) 999-9305
mai@statesunited.org
max@statesunited.org

Christine P. Sun
95 Third Street, 2nd Floor
San Francisco, CA 94103
(202) 999-9305
christine@statesunited.org

*Counsel for* Amici Curiae
*Bipartisan Former Election Officials*

## CERTIFICATE OF SERVICE

I, Bonnie I. Robin-Vergeer, hereby certify that on November 2, 2026, I electronically filed the foregoing Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

Dated: November 2, 2026

*/s/ Bonnie I. Robin-Vergeer*
Bonnie I. Robin-Vergeer

*Counsel for* Amici Curiae
*Bipartisan Former Election Officials*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-7303

I am the attorney or self-represented party.

**This brief contains** 4055 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[**X**] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
- [ ] it is a joint brief submitted by separately represented parties.
- [ ] a party or parties are filing a single brief in response to multiple briefs.
- [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Bonnie I. Robin-Vergeer **Date** November 2, 2026
*(use "*s/[typed name]*" to sign electronically-filed documents)*

# ADDENDUM

## IDENTITY OF *AMICI CURIAE*

**Pam Anderson** served as the City Clerk of Wheat Ridge from 2003 to 2007, Jefferson County Clerk and Recorder from 2007 to 2015, and as the Executive Director of the Colorado County Clerks Association from 2015 to 2020. She was the 2022 Republican Nominee for Colorado Secretary of State.

**Tina Barton**, former Rochester Hills, MI, City Clerk, brings over 32 years of government experience and more than two decades of expertise in election administration. She serves on national boards dedicated to strengthening election security and administration.

**Karen Brinson Bell** served as Executive Director of the North Carolina State Board of Elections from 2019 to 2025, overseeing election administration for more than 7.5 million registered voters across the state's 100 counties. Since 2006, she has served in various roles at the county, state, and national levels within the elections profession.

**Kathy Boockvar** served as Pennsylvania's Secretary of the Commonwealth from 2019 to 2021. While Secretary, Ms. Boockvar led Pennsylvania's Inter-Agency Election Security and Preparedness Workgroup, and co-chaired the National Association of Secretaries of State (NASS) Election Committee.

Ms. Boockvar also served as Senior Advisor to Governor Tom Wolf on Election Modernization.

**Mary Estill Buchanan** served as Colorado's Secretary of State from 1974 to 1983. During Ms. Buchanan's tenure, she worked across party lines to support the effective administration of Colorado's elections and advocated for reforms to improve transparency in elections and public office.

**Edgardo Cortés** served as Virginia's Commissioner of Elections from 2014 to 2018. While Commissioner, he chaired the U.S. Election Assistance Commission (EAC) Standards Board. He previously served as General Registrar of Fairfax County, Virginia, and as Deputy Director for Policy and Director of Grants at the EAC.

**Joan Growe** served as Minnesota's Secretary of State from 1975 to 1999. Prior to that, Ms. Growe served in the Minnesota House of Representatives from 1973 to 1974. During her 24-year tenure as Secretary of State, Ms. Growe worked with county officials to establish Election Day voter registration and promoted improvements in election administration, including new voting technology and motor voter registration.

**Phil Keisling** served as Oregon's Secretary of State from 1991 to 1999. During his tenure, Mr. Keisling helped lead the effort to make Oregon the first

state in the nation to conduct all elections by automatically mailing ballots to all active registered voters.

**Edward Lindsey** served on the Georgia State Election Board beginning in 2022, following his appointment by the Speaker of the Georgia House of Representatives. Prior to that, Mr. Lindsey served in the Georgia House of Representatives from 2005 to 2014, including three terms as House Majority Whip. Mr. Lindsey also served on the Fulton County Election Board from 2002 to 2004.

**Patty Hansen** served as the Coconino County Recorder in Arizona from 2013 to 2024, having previously served as Deputy Recorder and Election Administrator for the county beginning in June 2003. Before moving to Arizona, Ms. Hansen held election administration positions in Minnesota, including at the Minnesota Secretary of State's Office, and Nebraska.

**Kathy H. Holland** retired from the Alamance County Board of Elections in 2022 after 32 years of service. Her tenure spanned 19 years as the Director of Elections, at retirement she held the position of President of the North Carolina Association of Election Directors (NCADE). After her retirement from public service, Kathy remains actively involved in the election community.

**Ryan Macias** served as voting system staff for the California Secretary of State from 2005 to 2016. Mr. Macias also served as Acting Director of the Voting Systems Testing and Certification Program at the United States Election

Assistance Commission (EAC) during his tenure between 2016 and 2019 and currently serves as an election technology and security consultant for state and local election administrators across the country.

**Jennifer Morrell** is an election administration and audit expert, and the CEO and co-founder of The Elections Group, a U.S.-based firm that supports election officials in strengthening the integrity, security, and transparency of elections. A United States Air Force veteran, she previously administered elections in Utah and Colorado for nearly a decade.

**Tammy Patrick** served as the Federal Compliance Officer of Maricopa County, Arizona for over a decade where she was responsible for DOJ preclearance filings under Section 5 of the Voting Rights Act and compliance with all federal statutes. She was appointed by President Barack Obama to serve as a Commissioner on the Presidential Commission on Election Administration and has provided testimony numerous times in Congress and state Legislatures on behalf of members of both political parties.

**Chris Piper** served as Commissioner of the Virginia Department of Elections from 2018 to 2022. While Commissioner, Mr. Piper served on multiple national boards, including the National Association of State Election Directors (NASED) and as Chair of the Election Assistance Commission's Standards Board.

**Miles Rapoport** served as Connecticut's Secretary of State from 1995 to 1999 and as a member of the Connecticut House of Representatives for ten years.

**Kathy Rogers** served as Georgia's State Elections Director in the Secretary of State's Office from 2002 to 2006, during which she oversaw the administration of elections statewide, including implementation of Georgia's uniform electronic voting system. Ms. Rogers previously served as the Director of Elections for Chatham County Georgia from 1998 to 2002.

**William Senning** served as the Director of Elections for the State of Vermont from 2013 to 2023, overseeing twelve statewide elections and significant modernization of election law and processes. Mr. Senning was a member of the National Association of State Election Directors, including serving as northeast regional representative to the board for four years.