FILED

NOV 2 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO; AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, AFL-CIO; LEAGUE OF UNITED LATIN AMERICAN CITIZENS; NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,<br><br>Plaintiffs - Appellees,<br><br>v.<br><br>DOJ - UNITED STATES DEPARTMENT OF JUSTICE; TODD BLANCHE, Attorney General, in his official capacity as Attorney General; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security,<br><br>Defendants - Appellants. | No. 26-7303<br><br>D.C. No.<br>3:26-cv-12800-TLT<br>Northern District of California, San Francisco<br><br>ORDER |

Before: Mary H. Murguia, Chief Judge, and Consuelo M. Callahan and Carlos T. Bea, Circuit Judges.

BEA, Circuit Judge:
Dissent by Chief Judge MURGUIA

Pursuant to Circuit Rule 27-3, Defendants-Appellants (“the Government”) has moved for an immediate administrative stay and a stay pending appeal of the district court’s grant of a temporary restraining order in favor of Plaintiffs-Appellees. We

have jurisdiction over this case under 28 U.S.C. § 1292(a)(1). The Government's motion is **GRANTED**.[†]

## I.

On October 29, 2026, Plaintiffs—two labor unions, and two political-interest groups—sued Defendants—the United States Department of Justice ("DOJ"), the Department of Homeland Security ("DHS"), the Attorney General, and the Secretary of Homeland Security (collectively, "the Government"). **D. Ct. Dkt. 26 ("Order") at 1.** Plaintiffs alleged, in relevant part, that Defendants violated the Voting Rights Act ("VRA") and the United States Constitution's Elections Clause when federal officers sent and delivered letters to California and Washington that requested that state and county election officials "sequester" the ballots of certain voters the Government believed to be aliens, **Order at 3; D. Ct. Dkt. 19-7 at 127–28.** The letters also stated that "[a]n alien voting in a federal election is a federal crime—and knowingly facilitating such conduct is equally unlawful." **D. Ct. Dkt. 29-1 at 9.** *Infra* App'x.

Plaintiffs filed an *ex parte* motion for a temporary restraining order ("TRO") to enjoin the Government from making any further requests for ballot sequestration or "threats" of prosecution. **D. Ct. Dkt. 17.**

The district court granted the motion on October 30, 2026. By its terms, the TRO will expire on November 16, 2026, seventeen days after its entry.[‡] **Order at 7.** It bars the Government from making further ballot-sequestration requests and "threats" of prosecution. ***Id.* at 6–7.** It also requires the Government to inform any state, county, or local government "to which any Defendant sent a letter regarding the processing and counting of ballots in the 2026 election . . . that the demands and threats of prosecution . . . reflected in that letter have been enjoined," and requires the DOJ to "inform the Court of any pending search warrant applications, grand jury

---

[†] Plaintiffs-Appellees' motion to file an oversize brief and *amicus curiae* Justice Connection's motion to file an amicus brief are likewise **GRANTED.**

[‡] We note that the district court attempted to modify the TRO to last only fourteen days during a hearing on November 2, 2026. However, after the Government's appeal, the district court lacked the jurisdiction to do so. *E.g.*, *Davis v. United States*, 667 F.2d 822, 824 (9th Cir. 1982) ("The filing of a notice of appeal generally divests the district court of jurisdiction over the matters appealed.") Therefore, we review the terms of the TRO as they existed at the time of the Government's appeal.

subpoenas . . . pertaining to any list of individuals alleged by Defendants to be ineligible to vote." **Order at 7.**

The district court entered the TRO *ex parte*. As it was not a hearing upon notice, the Government did not appear to oppose Plaintiffs' motion in the district court.

The Government filed a notice of appeal and, on November 1, 2026, filed the instant motion.

## II.

We review the Government's motion for a stay pending appeal under four factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (citation omitted). A stay "is not a matter of right, even if irreparable injury might otherwise result." *Id*. at 433 (citation omitted). It is "an exercise of judicial discretion," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id*. at 433–34.

The first two factors "are the most critical." *Id*. at 434. On the first, "[i]t is not enough that the chance of success on the merits be 'better than negligible.'" *Id*. (citation omitted). On the second, "simply showing some 'possibility of irreparable injury'" does not suffice. *Id*. at 434–35 (citation omitted); *see Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020); *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011) (per curiam). Once an applicant satisfies the first two factors, we assess the harm to the opposing party and weigh the public interest. *Nken*, 556 U.S. at 435. Those factors merge when the government is a party. *See id*.; *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

In evaluating the Government's likelihood of success, we "review an order regarding preliminary injunctive relief for abuse of discretion, but review any underlying issues of law de novo." *Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918, 927 (9th Cir. 2021) (citation omitted).

## III.

The Government has established a likelihood of success on the merits.

### A.

First, we clarify that the district court's order, though styled as a TRO, is reviewable as a preliminary injunction. Whether a court of appeals has jurisdiction to review an order styled in this manner depends on the "practical effect" of the order, not the order's title. *Abbott v. Perez*, 585 U.S. 579, 594 (2018) ("We have previously made clear that where an order has the 'practical effect' of granting or denying an injunction, it should be treated as such for purposes of appellate jurisdiction); *Sampson v. Murray*, 415 U.S. 61, 86 n.58, 88 (1974) (construing a TRO as a preliminary injunction based on, in relevant part, "the possibility of drastic consequences which cannot later be corrected. . . . To deny review of an order that has all the potential danger of a preliminary injunction in terms of duration, because it is issued without a preliminary adjudication of the basic rights involved, would completely defeat the purpose [of appellate review of preliminary injunctions].")

A TRO has the effect of a preliminary injunction (and is therefore reviewable by the court of appeals) when it lasts longer than the default TRO period of fourteen days, *id.* at 1043–44, when it requires mandatory action, *Adams v. Vance*, 570 F.2d 950, 953 (D.C. Cir. 1978), or when, absent review, the appellant "would be effectively foreclosed from pursuing further interlocutory relief," *Newsom v. Trump*, 141 F.4th 1032, 1044 (9th Cir. 2025) (per curiam) (quoting *Env't Def. Fund, Inc. v. Andrus*, 625 F.2d 861, 862 (9th Cir. 1980)).

The TRO here has all three features. It lasts an initial period of seventeen days, it requires mandatory action by the Government (notifying every recipient of the letters and disclosing pending subpoenas and warrant applications), and it bars the Government from demanding ballot sequestration until and beyond Election Day, which renders later interlocutory relief meaningless for the Government's purposes. Therefore, we have jurisdiction to review it.

### B.

Next, we review the substance of the district court's order. The district court's order is based on its conclusion that Plaintiffs had established that the Government's conduct likely violated Section 11(b) of the VRA and the Elections Clause.

The district court is likely wrong on both counts.

Section 11(b) of the VRA, 52 U.S.C. § 10307(b), provides:

> No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote, or intimidate, threaten, or coerce any person for exercising any powers or duties under section 10302(a), 10305, 10306, or 10308(e) of this title or section 1973d or 1973g of title 42.

Plaintiffs' VRA claim faces an immediate problem: Section 11(b) does not contain an express private cause of action. *See* 52 U.S.C. § 10307(b). Instead, the VRA's text vests enforcement authority in the Attorney General. *Id.* § 10308(d) ("Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section . . . 10307 . . . , the Attorney General may institute for the United States, or in the name of the United States, an action for preventive relief . . . ."). "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001).

The more fundamental problem is that Plaintiffs' claim would require us to recognize an implied private cause of action *against the Executive*. *Cf. Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017) ("it is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation."). The VRA's text, which prohibits conduct by "person[s]," counsels against such a reading, as courts apply a "longstanding interpretive presumption that 'person' does not include the sovereign," *Return Mail*, 587 U.S. at 626–27, and require "an express statement by Congress" before subjecting the Executive to a generally applicable statute. *Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992).

This separation-of-powers concern has particular weight in this case. Consider the conduct at issue here: the Government delivered letters to state and local officials that requested that the states implement the Executive's preferred policy, warned those states of the strictures of federal law, and instigated investigations into suspected violations of that law. These are core Executive functions. Congress cannot be lightly presumed to have imposed new liability for that conduct. *See Trump v. United States*, 603 U.S. 593, 609 (2024) ("Congress cannot act on, and courts cannot examine, the President's actions on subjects within his 'conclusive and

preclusive' constitutional authority."); *id.* at 620 ("the Executive Branch has 'exclusive authority and absolute discretion' to decide which crimes to investigate and prosecute, including with respect to allegations of election crime," and "[i]nvestigative and prosecutorial decisionmaking is 'the special province of the Executive Branch.'"); *id.* at 627 (explaining that the Take Care duty "plainly encompasses enforcement of federal election laws," and the Executive "may speak on and discuss such matters with state officials . . . to encourage them to act in a manner that promotes the President's view of the public good."); *cf. Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 188 (2024) ("A government official can share her views freely and criticize particular beliefs, and she can do so forcefully in the hopes of persuading others to follow her lead.").

We therefore decline Plaintiffs' invitation to read the VRA as rendering the Executive's exercise of those functions as unlawfully intimidating, threatening, or coercive.

The Government is also likely to prevail on Plaintiffs' Elections Clause claim. The Elections Clause assigns to the states the authority "to prescribe the manner by which congressional elections are conducted." *United States v. California,* ___ F. 4th ____, 2026 WL 3268272, at *3 (9th Cir. Oct. 30, 2026). In this case, the Government requested that the targeted states sequester certain ballots. They refused, and that refusal was ratified by this Court, *see generally id.*, and the Supreme Court declined to grant emergency relief, *United States v. California*, 610 U.S. __ (Nov. 2, 2026). The states' constitutional authority to regulate their elections is therefore unaffected. *See Printz v. United States*, 521 U.S. 898, 935 (1997) (holding that the federal government may request, but not compel, the states to enact or enforce a federal program).

Plaintiffs treat *California* as dispositive on this point. The present case, however, poses a different question from that posed to the *California* panel: there, the panel decided whether a state *must* adopt the ballot-sequestration process requested by the Government here. *California*, ___ F. 4th ____, 2026 WL 3268272, at *1. Here, we consider only whether the Government *can* make such a request in the first place. And as we explained above, we think that the Government has established that it likely can. We find these requests to be core Executive functions that did not actually disturb the states' regulation of their own elections.

**C.**

The remainder of the factors do not counsel against a stay. Absent a stay, the Government will be irreparably injured. *Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 4 (2025) (mem.) (Kavanaugh, J., concurring in the grant of application for stay) ("As the Court has indicated, any time that the Government is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (cleaned up) (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 835 (2025)).[§]

At most, Plaintiffs fear a possibility of a future prosecution. If such a prosecution is ever brought, the prosecution itself supplies the means by which any defect, vindictiveness included, can be raised and remedied. *See Sampson*, 415 U.S. at 90 (citation omitted) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). The Government's injury—being barred from requesting that the states segregate ballots from suspected non-citizens—cannot be undone after the fact.

## IV.

For these reasons, we **GRANT** the Government's motion for stay.

[§] This case is distinguishable from *California Nurses Ass'n v. Mullin*, No. 26-7139, ___ F.4th ___, 2026 WL 3268397 (9th Cir. Oct. 30, 2026) (per curiam). There, we held that the Government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Cal. Nurses*, 2026 WL 3268397, at *6 (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)). As we explained above, the conduct by the Government here was likely not unlawful.

FILED

NOV 2 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Service Employees International Union v. Department of Justice*, No. 26-7303
MURGUIA, Chief Judge, dissenting:

Last Friday, we held that the United States has no authority to compel state elections officials to disregard their own lawful election procedures. *United States v. California*, No. 26-7231, 2026 WL 3268272, at *4 (9th Cir. Oct. 30, 2026) (hereinafter, "*California*"). Today, by contrast, we hold that several federal agencies and officials ("Defendants") *may* compel state election officials to put aside state election procedures in favor of Defendants' preferred procedures by threatening prosecution of state and local election officials who fail to comply. These two decisions cannot be reconciled. I dissent.

**I.**

On October 13, 2026, Defendant Department of Justice ("DOJ") sent letters to the State of California and Los Angeles County demanding that election officials review a list of approximately 20,000 registered California voters who federal agencies identified as "likely noncitizens" *within 48 hours*. California and Los Angeles County refused, expressing doubts about the veracity and reliability of the list.

The United States sued California and Los Angeles County on October 15. *United States v. California*, No. 2:26-cv-12025-DOC-ADS (C.D. Cal.). On October 16, the DOJ sent a letter to Los Angeles County officials stating:

> Under 18 U.S.C. § 611(a), noncitizens are prohibited from voting in

> any election involving federal offices. Under 18 USC. § 2, anyone who aids, abets, counsels, induces, or procures the commission of a federal offense is equally liable. **If persons knowingly tabulate ballots cast by individuals identified by federal agencies as noncitizens, they risk becoming aiders and abettors to a federal crime.** Your assertion that ballots must be counted simply because California's registration system relies on self-attestation does not relieve election officials of their obligations under federal law *when they are on actual notice of noncitizen voting.*

(Emphases added.)

While the case was pending, the DOJ delivered letters—using uniformed DHS officers—to county officials across California, providing lists of purported noncitizens on the voter rolls and reiterating that the letters placed recipients on notice that they risk criminal liability if they process or count ballots that Defendants claims are ineligible. Federal marshals reportedly served at least one county employee at home.

At the October 27 district court hearing in *California*, Defendants again reiterated "that State and County election officials who do not comply with [Defendants'] letter risk federal charges under 18 U.S.C. § 2, which criminalizes aiding and abetting the commission of a criminal offense." *United States v. California*, No. 2:26-cv-12025-DOC-ADS, 2026 WL 3252428, at *7 (C.D. Cal. Oct. 28, 2026). The district court in *California* denied the United States' request for an injunction on the following day, October 28.

By October 29, the DOJ reportedly directed federal prosecutors to pursue

criminal subpoenas of state and local elections officials in California. Defendants reportedly sent similar letters to election officials in all fifty states.

On October 30, this court denied the United States' emergency motion for an injunction on appeal in *United States v. California*, concluding that the United States had not shown a likelihood of success on its claim that 18 U.S.C. § 611 preempts California's constitutionally permitted statutory scheme for administering its elections. *California*, 2026 WL 3268272, at *4. Today, the Supreme Court denied, without dissent, Defendants' application for an injunction pending appeal. *United States v. California*, No. 26A624 (U.S. Nov. 2, 2026).

Plaintiffs Service Employees International Union, AFL-CIO and American Federation of State County and Municipal Employees, AFL-CIO represent thousands of election workers in California and across the country, who face the risk of criminal prosecution for complying with state election procedures. Plaintiffs National Association for the Advancement of Colored People and the League of United Latin American Citizens represent members who fear that Defendants will erroneously identify them as noncitizens and that the resultant disruption will prevent their votes from being counted.

On October 30, the district court—without opposition from Defendants and without a hearing—granted Plaintiffs' ex parte application for a temporary restraining order ("TRO") enjoining Defendants from "threaten[ing], intimidat[ing]

or coerc[ing] state or local elections officials or workers" for failure to comply with Defendants' demands to halt processing of ballots cast by individuals that Defendants allege are ineligible to vote.

## II.

In deciding whether to grant a stay, we consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Washington v. U.S. Dep't of Educ.*, 161 F.4th 1136, 1139 (9th Cir. 2025) (citation modified) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "The first two factors of the traditional standard are the most critical." *Nken*, 556 U.S. at 434.

## III.[1]

In *California*, this court addressed whether the United States may, relying on 18 U.S.C. § 611, require states to segregate ballots from individuals that federal

[1] As an initial matter, it is not clear that the district court's order is appealable, as, in face of exigent circumstances, the district court issued the TRO without a hearing or any challenge to the basis of its order. *See E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 762 (9th Cir. 2018) ("We treat a TRO as a preliminary injunction 'where an adversary hearing has been held, and the court's basis for issuing the order [is] strongly challenged.'" (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 804 (9th Cir. 2002)).

agencies have identified as "likely" noncitizens. *California*, 2026 WL 3268272 at *3. We concluded it may not. Now, Defendants ask us to consider whether they may compel state and local officials to comply with their preferred procedure on pain of prosecution. The answer is the same: they may not.

*California* is binding on this panel, and it is all but dispositive here.

There, we explained that the Elections Clause expressly vests the states with "responsibility for the mechanics of congressional elections," unless Congress preempts state elections procedures. *Id.* (quoting *Arizona v. Inter-Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013) ("*ICTA*")). And "[n]othing in § 611, a statute that criminalizes voting by a noncitizen, preempts California's comprehensive statutory scheme that has been duly enacted under the Elections Clause." *Id.* at *4. California law, like federal law, "plainly prohibits voting by noncitizens," and "[t]o that end, California has established a comprehensive statutory scheme to ensure the integrity of its elections." *Id.* "Because Congress has not exercised the specific power granted to it under the Elections Clause to override California's established laws for challenging ballots or removing ineligible voters," permitting the United States "to prescribe how [California] must process ballots would 'override the plain and manifest dictates of the Constitution itself.'" *Id.* at *5 (quoting *Ex parte Siebold*, 100 U.S. 371, 392 (1879)).

As in *California*, Defendants rely on 18 U.S.C. § 611.[2] And as in *California*, Defendants seek to compel state and local elections officials to segregate the contested ballots. The majority characterizes Defendants' demand as a mere "request." But if Defendants lack the authority to *directly* compel state election officials to implement their preferred state elections procedures, it is difficult to imagine how Defendants may *indirectly* coerce state election officials to disregard state eligibility procedures through threat of prosecution. *See Coal. for Humane Immigr. Rts v. Dep't of Homeland Sec.*, No. 26-cv-3072, at *15 (D.D.C. Cir. Nov. 2, 2026) ("It is thus highly doubtful that Section 611(a) could be constitutionally applied to criminalize state officials' compliance with state-law procedures for counting ballots cast by registered voters."). The majority would permit Defendants to preempt state election procedures by threat of prosecution.

Accordingly, Defendants are not likely to succeed on the merits of Plaintiffs' Election Clause claim.

**IV.**

---

[2] Defendants' attempt to buttress their authority through the Take Care Clause must fail, as the Take Care Clause cannot confer on Defendants powers that Congress has not. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952) ("[T]he President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker"); *California*, 2026 WL 3268272, at *4 ("Congress's exercise of its Elections Clause preemption power only goes 'so far as it is exercised, and no farther.'" (quoting *ICTA*, 570 U.S. at 9))

For similar reasons, Defendants cannot establish irreparable harm. "*Nken* instruct[s] 'that if the petition[er] has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (citation omitted). "There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008). But as explained below, Defendants are not harmed by state and local officials' compliance with lawful elections procedures, and the TRO does not irreparably curtail Defendants' exercise of their prosecutorial powers.

In their filings, Defendants vacillate between two theories of irreparable harm. On one hand, Defendants contend that it is imperative that they continue to issue these "warn[ings]" to state and local elections officials lest elections officials refuse to segregate the contested ballots. That is, Defendants contend that they would be harmed if elections officials follow the very state elections procedures that we have determined are *lawful*. *California*, 2026 WL 3268272, at *4. In the absence of an underlying "crime," the inability to prosecute that crime cannot rise to the level of irreparable harm under *Nken*.

That the district court in *California* found Defendants' process for creating their list was not credible "substantially weaken[s] [Defendants'] claim that they

are likely to suffer irreparable harm from" election officials tabulating "ballots being cast by noncitizens." *Id.* at *6. Indeed, Defendants' efforts are far more likely to disenfranchise eligible voters than they are to prevent noncitizen voting, hindering Defendants' important interest in ensuring that the votes of eligible voters are counted.

On the other hand, Defendants argue that any encroachment on their prosecutorial authority constitutes irreparable harm. As an initial matter, the TRO does *not* preclude lawful investigations or prosecutions of voter fraud—even into elections officials. It only bars demands or threats of prosecution against election officials for processing ballots from individuals who Defendants allege are ineligible to vote for a two-week period during the administration of an ongoing election. Defendants "do not point to evidence explaining that" their enforcement activities "would be impracticable or impossible to conduct under the [TRO's] constraints." *California Nurses Ass'n v. Mullin*, No. 26-7139, 2026 WL 3268397, at *6 (9th Cir. Oct. 30, 2026).

Moreover, Defendants' window to prosecute and investigate voter fraud does not end on Election Day. The "federal government can still prosecute noncitizens for voting after the fact because the State preserves the records of who voted (even if the State allows the noncitizen vote to count)." *United States v. California*, No. 26-7070, 2026 WL 3212945, at *24 (9th Cir. Oct. 26, 2026)

(Bumatay, J., dissenting). Indeed, the DOJ's longstanding policy directs that it should not engage in "overt criminal investigative measures . . . involving alleged ballot fraud" until the election is concluded. Justice Manual §9-85.300. *See Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017) (concluding that a stay was not necessary to avoid irreparable harm where the district court's order "merely returned the nation temporarily to the position it has occupied for many previous years").

Finally, the principles underlying *Purcell* counsel against disturbing the district court's order while the election is ongoing. The district court's TRO effectively preserves state eligibility procedures during an ongoing election, consistent with the principle that "lower federal courts should ordinarily not alter the election rules on the eve of an election." *Scanlan v. Coal. for Open Democracy*, 610 U.S. ___, 2026 WL 3167846, at *1 (2026) (quoting *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (per curiam)). "The *Purcell* principle applies with even greater force" when, as here, an election is already under way. *People Not Politicians v. Onder*, No. 26A388, 2026 WL 2883222, at *2 (U.S. Sept. 25, 2026) (per curiam); *see California*, 2026 WL 3268272 at *7 ("[I]t is not only voter confusion that matters in the *Purcell* analysis but election administration and broader electoral disorder stemming from late federal court-ordered changes to election rules." (citation omitted)). Defendants'

efforts to investigate and prosecute elections officials would hamper states' ability to effectively administer an election that is already well under way.

Defendants have not shown irreparable harm.

## V.

On the eve of Election Day, Defendants insist they must be free to use their prosecutorial powers to do what they could not through their applications for injunctions in this court and the Supreme Court. But the federal executive has no right to dictate election procedures to the states. And if Defendants cannot dictate these procedures directly, then they likewise cannot dictate them by subjecting vulnerable election workers to baseless—but chilling—threats of federal prosecution. The Constitution's allocation of election procedures to the states is meaningless if Defendants can coerce states into foregoing their chosen procedures by abusing their prosecutorial powers.

I would deny Defendants' emergency motion to stay because the district court properly attempted to put a stop to Defendants' efforts to intimidate election workers into abandoning lawful state election procedures through spurious threats of prosecution. I respectfully dissent.

# APPENDIX

**U.S. Department of Justice**

950 Pennsylvania Ave, NW
Washington, DC 20530

(202) 514-2000

October 13, 2026

Dean C. Logan
Los Angeles County Registrar-Recorder / County Clerk
12400 Imperial Highway
Norwalk, CA 90650

Via hand delivery

Re: Noncitizen Voting in the 2026 Federal Election

Dear Mr. Logan:

As you're aware, federal law prohibits noncitizens from voting in federal elections. *See* 18 U.S.C. § 611. The Supreme Court has also recognized that States "may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Norwood v. Harrison*, 413 U.S. 455, 465 (1973) (citation omitted). I write to seek your help to protect the integrity of the ongoing federal election.

On July 16, Secretary Mullin made the California Secretary of State aware that there are likely numerous noncitizens registered to vote in the federal election in California. He then asked for her cooperation to ensure the accuracy of these findings and to prevent noncitizen votes from diluting citizen votes. The Secretary's response the following week did not refute that noncitizens are registered to vote in California. Nor did it contest that noncitizens receive ballots through California's vote-by-mail regime, which automatically sends voting materials to "every registered voter." 2021 Cal. Stat. ch. 312 (codified at Cal. Elec. Code § 3000.5). Instead, the Secretary of State asked for more information. I am now providing you, along with the Secretary of State, additional details.

Accompanying this letter is a password-protected thumb drive with a list of names of people the Federal Government believes are likely noncitizens who were sent a vote-by-mail ballot from California to participate in the November 2026 federal election.

We request that you review the list within 48 hours to determine whether any citizens are listed. For individuals whom you cannot independently confirm citizenship status, we request that you immediately instruct the appropriate elections official to segregate—not cancel—those individuals' vote-by-mail ballots until their citizenship status can be determined. If individuals on the list have not yet been sent

2026 OCT 13 PM 2:55

a vote-by-mail ballot, take all immediate and reasonable steps to not provide a ballot to those individuals until we confirm their citizenship status. If a ballot for any individual on the list has been returned, instruct the appropriate elections official to not verify the signature and/or tabulate the ballot until citizenship can be determined. This process will protect American citizens' votes while preventing noncitizens from participating in the federal election in violation of federal law.

The United States hopes that you share our commitment to ensure that only American citizens participate in our federal elections. Allowing noncitizens to vote cancels citizen votes. States are responsible for voter registration, and the Federal Government is responsible for maintaining immigration records to enable verification of citizenship. Working together, we can more effectively protect against voter dilution and promote election integrity.

Please ensure that the process described above to prevent noncitizens from voting in the federal election is implemented by contacting election@hq.dhs.gov by October 15 at noon EST. If you cannot implement this process by then, given the ongoing federal election, the United States will have no choice but to seek emergency relief.

We look forward to our collaboration as we work together to ensure free, fair and accurate elections.

Sincerely,

R. Trent McCotter
Acting Deputy Attorney General
United States Department of Justice

cc:

Bilal A. Essayli
First Assistant U.S. Attorney
Central District of California

PASSWORD:
[redacted]

**U. S. Department of Justice**

*United States Attorney*
*Eastern District of Washington*
*Thomas S. Foley U. S. Courthouse, Suite 340*
*P. O. Box 1494* *(509) 353-2767*
*Spokane, Washington 99210-1494* *Fax (509) 835-6397*

October 26, 2026

Via Email

The Honorable Steve Hobbs
Secretary of State
PO Box 40220 Olympia, WA 98504-0220
steve.hobbs@sos.wa.gov;
secretaryofstate@sos.wa.gov

Re: Noncitizen Voting in the 2026 Federal Election

Dear Secretary Hobbs,

As you're aware, federal law prohibits noncitizens from voting in federal elections. *See* 18 U.S.C. § 611. The Supreme Court has also recognized that States "may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Norwood v. Harrison,* 413 U.S. 455, 465 (1973) (citation omitted). We're aware of the current litigation and correspondence surrounding Assistant Attorney General Harmeet Dhillon's request for the Washington voter roles – our request here, is separate and apart from that inquiry and litigation, as we seek your assistance to protect the integrity of the ongoing federal election.

Washington law requires the automatic mailing of voting materials to "each active registered voter of the state." Revised Code of Washington §29A.40.010. By law, ballots are to be mailed to "each voter at least eighteen days before each primary or election," and ballots for the 2026 General Election were required to be sent to voters no later than October 15, 2026. Revised Code of Washington §29A.40.070(1). Accordingly, any registered voter in the State of Washington, including noncitizens that receive ballots through Washington's vote-by-mail regime, was required to be sent a ballot no less than seven (7) days ago.

The United States is concerned with the number of noncitizen voters, both enrolled and actively voting in the State of Washington, as allowing noncitizens to vote cancels citizen votes. To combat voting by noncitizens, in violation of 18 U.S.C. § 611, the Department of Homeland Security (DHS) provided our offices a list of names of persons who are noncitizens, who, with a high level of confidence, have voted in elections as recently as the August 2026 Primary elections. Some of these individuals have voted in Washington for over a decade and have voted more than two dozen times. To be clear: through the efforts of our federal law enforcement partners, the individuals identified are or were noncitizens (i.e., they may have subsequently naturalized). Our federal partners further identified that these individuals have, with a high level of confidence, voted. It is the United States' belief that each of these individuals was sent a vote-by-mail ballot from the State of Washington to participate in the November 2026 federal election. The list of the identified individuals is attached to this letter and is comprised of over 400 individuals and over 1,500 total votes.

We advise that we anticipate imminently receiving a second list of individuals believed to be noncitizens who are registered to vote from DHS, which we will transmit ahead of the November 2, 2026, General Election with the request that you follow the protocol listed below.

To help protect the integrity of the 2026 Election our request and expectations are simple:

1. You, or your office, review the list within 24 hours of receipt of this letter to determine whether United States citizens are listed.
2. If a ballot for any individual on the list has been or subsequently is returned, instruct the appropriate elections official to not verify the signature and/or tabulate the ballot until citizenship can be determined.

We believe the requested actions will allow your office to determine whether noncitizens are voting in Washington's elections in violation of State and Federal law. As you noted in your July 7, 2026, letter to William Mohrman, Senior Counsel with the Department of Justice's Civil Rights Division, RCW 29A.04.205 provides the State's obligation and commitment "to protect the integrity of the electoral process." You further invited the Department of Justice to provide "meaningful assistance" to protect election integrity – that is our goal here. Through these efforts, specific individuals were identified, who, with high confidence, should not be registered to vote under Washington law, RCW 29A.08.370. Our request is simple; we ask that your office rectify this issue immediately. We further recognize the obligation county auditors and government agency employees providing voter registration services are under to properly carry out their duties in connection with voter registration pursuant to RCW 29A.84.110. While our offices do not enforce State law, we do make criminal referrals to our state counterparts; nonetheless, we do expect a prompt response from your office by enacting the approach above and with any further actions you deem appropriate to comply with the State or Federal laws cited.

Please ensure that the process described above to prevent noncitizens from voting in the federal election is implemented by contacting election@hq.dhs.gov and copying me at: pete.serrano@usdoj.gov by October 28 at noon PST. If you cannot implement this process by then, given the ongoing federal election, the United States will have no choice but to seek emergency relief.

The United States hopes that you share our commitment to ensure that only American citizens participate in our federal elections. Your assistance in this process will protect American citizens' votes while preventing noncitizens from violating federal law by participating in the federal election. We look forward to our collaboration as we work together to ensure free, fair and accurate elections.

Sincerely,

Charles Neil Floyd
Acting United States Attorney

Pete Serrano
First Assistant United States Attorney

Case: 26-7303, 11/02/2026, DktEntry: 24.1, (23 of 30)



cc: Stuart Holmes
Director of Elections
416 Sid Snyder Ave SW
Olympia, WA 98501
stuart.holmes@sos.wa.gov

**U.S. Department of Justice**

950 Pennsylvania Ave, NW
(202) 514-2000
Washington, DC 20530

October 13, 2026

Shirley N. Weber, Ph.D.
California Secretary of State
1500 11th Street
Sacramento, CA 95814

Via legalsupport@sos.ca.gov

Re: Noncitizen Voting in the 2026 Federal Election

Dear Secretary Weber:

As you are aware, federal law prohibits noncitizens from voting in federal elections. *See* 18 U.S.C. § 611. The Supreme Court has also recognized that States "may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Norwood v. Harrison*, 413 U.S. 455, 465 (1973) (citation omitted). I write to seek your help to protect the integrity of the ongoing federal election.

On July 16, Secretary Mullin made you aware that there are likely numerous noncitizens registered to vote in the federal election in California. He then asked for your cooperation to ensure the accuracy of those findings and to prevent noncitizen votes from diluting citizen votes. Your response the following week did not refute that noncitizens are registered to vote in California. Nor did it contest that noncitizens receive ballots through California's vote-by-mail regime, which automatically sends voting materials to "every registered voter." 2021 Cal. Stat. ch. 312 (codified at Cal. Elec. Code § 3000.5). Instead, you asked for more information. I am now providing you additional details.

Earlier today, we provided the Los Angeles County Registrar-Recorder / County Clerk with a password-protected thumb drive with a list of names of people the Federal Government believes are likely noncitizens who were sent a vote-by-mail ballot to participate in the November 2026 federal election. We can also provide you a digital copy of the list if you send us a secure email address.

We request that you review the list within 48 hours to determine whether any citizens are listed. For individuals whom you cannot independently confirm citizenship status, we request that you immediately instruct the appropriate elections official to segregate—not cancel—those individuals' vote-by-mail ballots until their citizenship status can be determined. If individuals on the list have not yet been sent a

vote-by-mail ballot, take all immediate and reasonable steps to not provide a ballot to those individuals until we confirm their citizenship status. If a ballot for any individual on the list has been returned, instruct the appropriate elections official to not verify the signature and/or tabulate the ballot until citizenship can be determined. This process will protect American citizens' votes while preventing noncitizens from participating in the federal election in violation of federal law.

The United States hopes that you share our commitment to ensure that only American citizens participate in our federal elections. Allowing noncitizens to vote cancels citizen votes. States are responsible for voter registration, and the Federal Government is responsible for maintaining immigration records to enable verification of citizenship. Working together, we can more effectively protect against voter dilution and promote election integrity.

Please ensure that the process described above to prevent noncitizens from voting in the federal election is implemented by contacting election@hq.dhs.gov by October 15 at noon EST. If you cannot implement this process by then, given the ongoing federal election, the United States will have no choice but to seek emergency relief.

We look forward to our collaboration as we work together to ensure free, fair and accurate elections.

Sincerely,

R. Trent McCotter
Acting Deputy Attorney General
United States Department of Justice

cc:

Bilal A. Essayli
First Assistant U.S. Attorney
Central District of California

**U.S. Department of Justice**

950 Pennsylvania Ave, NW
Washington, DC 20530

(202) 514-2000

October 16, 2026

Peter M. Bollinger
Assistant County Counsel
Los Angeles County Counsel's Office

Re: Response to October 15, 2026 Letter

Mr. Bollinger:

The Department of Justice has reviewed your October 15 letter responding to the federal investigative materials provided to the Los Angeles County Registrar-Recorder/County Clerk ("County ROV"). I write to address several legally untenable assertions and to make unmistakably clear the legal implications for violating 18 U.S.C. § 611.

Your letter asserts that the County ROV is "legally prohibited" from taking even minimal steps—such as temporarily segregating ballots—after receiving credible federal evidence identifying tens of thousands of individuals suspected to be noncitizens. That position is incorrect as a matter of federal law and places officials in both the California Secretary of State ("SOS") and County ROV offices at risk of knowingly facilitating violations of federal criminal statutes.

On October 13, the Department hand delivered a password-protected dataset identifying more than 20,000 individuals who federal agencies reasonably believe are likely noncitizens registered to vote in California. This list was developed through a multilayered, multiagency investigative methodology that relied upon internal immigration records, data matching, supervisory verification procedures, and more.

The legal consequences for either facilitating or ignoring a federal crime are significant. Noncitizen voting in a federal election is a federal crime—and knowingly facilitating such conduct is equally unlawful. Under 18 U.S.C. § 611(a), noncitizens are prohibited from voting in any election involving federal offices. Under 18 U.S.C. § 2, anyone who aids, abets, counsels, induces, or procures the commission of a federal offense is equally liable. If persons knowingly tabulate ballots cast by individuals identified by federal agencies as noncitizens, they risk becoming aiders and abettors to a federal crime. Your assertion that ballots must be counted simply because California's registration system relies on self-attestation does not relieve election officials of their obligations under federal law ***when they are on actual notice of noncitizen voting.*** Nor can state procedures supersede federal criminal statutes.

Your argument that the County is "not authorized" to pause or segregate ballots because California relies on attestation-based registration is immaterial. Section 611 does not excuse unlawful voting simply because a State employs a permissive registration method. The Department has not asked the County to adjudicate immigration status; it has asked the County to temporarily set aside ballots from individuals whose eligibility is credibly in question—a standard election-administration practice implemented nationwide.

Likewise, your reliance on the National Voter Registration Act's ("NVRA's") "quiet period" is misplaced. The NVRA's 90-day limitation applies only to systematic list-maintenance programs—not to targeted, individualized evidence of unlawful voting identified by federal law enforcement. The Department has not requested a purge, cancellation of registrations, or any programmatic action. We requested only temporary ballot segregation pending citizenship verification. Invoking the NVRA to justify counting ballots unlawfully cast is both legally incorrect and operationally irresponsible.

Additionally, the administrative burdens, timing constraints, or the fact that the investigative list includes individuals residing outside Los Angeles County do not permit the County to knowingly tabulate ballots that federal law prohibits. Once the United States provides credible evidence that certain ballots may be unlawful to count, election officials may not disregard that information because it is inconvenient to process. Administrative difficulty is not a defense to violating federal law or aiding or abetting a federal offense.

The Department strongly urges the County and the SOS to reconsider their positions before taking actions that risk significant federal scrutiny and legal exposure.

Sincerely,

/s/ ____________________
Trent McCotter
Acting Deputy Attorney General
United States Department of Justice

cc: Shirley N. Weber, Ph.D, California Secretary of State
Dean C. Logan, Los Angeles County Registrar-Recorder/County Clerk

*United States Attorney*
*Northern District of California*

*11th Floor, Federal Building*
*450 Golden Gate Ave., Box 36055*
*San Francisco, CA 94102-3495*

*(415)436-7200*

*FAX: (415)436-7234*

October 23, 2026

Matt Moreles
Registrar of Voters
Santa Clara County
1555 Berger Drive, Building 2
San Jose, CA 95112

Re: Notice of Suspected Likely Aliens on the Santa Clara County Voter Roll

Dear Mr. Moreles:

As you're aware, federal law prohibits noncitizens from voting in federal elections. *See* 18 U.S.C. § 611. It is also unlawful to deprive the residents of California of a fair and impartially conducted federal election process by casting or tabulating ballots that are known by the person to be materially false, fictitious, or fraudulent under the laws of California. *See* 52 U.S.C. 20511(2)(B). And it is unlawful for those not entitled to vote in an election to fraudulently vote or attempt to vote. *See* Cal. Elec. Code § 18560(a). The Supreme Court has also recognized that States "may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Norwood v. Harrison*, 413 U.S. 455, 465 (1973) (citation omitted). I write to seek your help to protect the integrity of the ongoing federal election.

On July 16, the Secretary of the Department of Homeland Security (DHS) made the California Secretary of State aware that there are likely numerous noncitizens registered to vote in the federal election in California. He then asked for her cooperation to ensure the accuracy of these findings and to prevent noncitizen votes from diluting citizen votes. The Secretary's response the following week did not refute that noncitizens are registered to vote in California. Nor did it contest that noncitizens receive ballots through California's vote-by-mail regime, which automatically sends voting materials to "every registered voter." 2021 Cal. Stat. ch. 312 (codified at Cal. Elec. Code § 3000.5). Instead, the Secretary of State asked for more information. The Department of Justice provided those details to the Secretary on October 13, which included a list of more than 20,000 names with accompanying personal identifying information for suspected aliens who are registered to vote in California. I am now providing you with a subset of that list specific to Santa Clara County that contains 902 likely aliens. Earlier this week, the Department charged 28 aliens for unlawful voting and registration offenses, each

of whom was on the list provided to the California Secretary of State.[1]

Within 48 hours, we ask that you commit to working with DOJ and DHS to identify who on the accompanying list is a citizen and who is not. That means sending us the nonpublic information associated with each suspected alien's registration, which includes everything in your possession from the following: a social security number, a copy of a state ID or driver's license or the information that appears on it, a copy of the voter registration application supporting the registration, and a copy or list of documents that were presented by the registrant at the time the person registered to vote or obtained their driver's license if registered as part of motor voter. By comparing the accompanying list with the requested information you provide, together we can quickly assess these specific suspected aliens registered to vote in your County.

For individuals whom citizenship status cannot be confirmed, we request that you immediately instruct the appropriate elections official to segregate—not cancel—those individuals' vote-by-mail ballots until their citizenship status can be determined. If a ballot for any individual on the list has been returned, instruct the appropriate elections official to not process the ballot until citizenship can be determined. This process will protect American citizens' votes while preventing noncitizens from participating in the federal election in violation of federal law.

A substantially similar letter to this one was sent to the Los Angeles County Registrar-Recorder/County Clerk. Instead of committing to working with the Department to prevent aliens from voting in the upcoming federal election, it sent a letter declining to review the evidence presented to it and resisting our civil lawsuit to compel segregation of those ballots until citizenship could be verified.

I write to make unmistakably clear the legal implications of continuing to send vote-by-mail ballots to those people on the list or tabulating ballots cast by them until citizenship can be verified.

This list was developed through a multilayered, multiagency investigative methodology at DHS that relied upon internal immigration records, data matching, supervisory verification procedures, and more. I am also attaching two declarations that detail this process that support the civil lawsuit filed last week.

The legal consequences for either facilitating or ignoring federal crimes are significant. An alien voting in a federal election is a federal crime—and knowingly facilitating such conduct is equally unlawful. Under 18 U.S.C. § 611(a), aliens are prohibited from voting in any election involving federal offices. This is also a state offense in California. *See* Cal. Elec. Code § 18560(a). And under 52 U.S.C. 20511(2)(B), knowingly violating that state statute in a federal election is also a federal offense. Further, under 18 U.S.C. § 2, anyone who aids, abets, counsels, induces, or procures the commission of a federal offense is equally liable. If persons knowingly tabulate ballots cast by individuals identified by federal agencies as noncitizens, they risk

---

[1] https://www.justice.gov/opa/pr/justice-department-charges-28-foreign-nationals-california-election-crimes

becoming aiders and abettors to a federal crime. Any assertion that ballots must be counted simply because California's registration system relies on self-attestation of citizenship does not relieve election officials of their obligations under federal law ***when they are on actual notice of noncitizen voting.*** Nor can state procedures supersede federal criminal statutes.

These federal statutes do not excuse unlawful voting simply because the State employs a permissive registration method. The Department is not asking Santa Clara County to adjudicate immigration status; it is asking it to temporarily set aside ballots from individuals whose eligibility is credibly in question—a standard election-administration practice implemented nationwide.

Others have pointed to the National Voter Registration Act's ("NVRA's") "quiet period." That is misplaced. The NVRA's 90-day limitation applies only to systematic list-maintenance programs—not to targeted, individualized evidence of unlawful voting identified by federal law enforcement. The Department is not requesting a purge, cancellation of registrations, or any programmatic action. We request only temporary ballot segregation pending citizenship verification. Invoking the NVRA to justify counting ballots unlawfully cast is both legally incorrect and operationally irresponsible.

Once the United States provides credible evidence that certain ballots may be unlawful to count, election officials may not disregard that information because it is inconvenient to process. Administrative difficulty is not a defense to violating federal law or aiding or abetting a federal offense.

The Department strongly urges you and your agency to work with the Department of Justice to ensure the integrity of California's federal elections before taking actions that risk significant federal scrutiny and legal exposure.

Sincerely,

CRAIG H. MISSAKIAN
United States Attorney