No. 26-7303

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

Service Employees International Union, AFL-CIO, et al.,
*Plaintiffs-Appellees*,
v.

United States Department of Justice et al.,
*Defendants-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
No. 3:26-cv-12800-TLT
The Honorable Judge Trina L. Thompson

# PLAINTIFFS-APPELLEES' BRIEF IN SUPPORT OF REHEARING EN BANC

---

Stacey Leyton
Barbara J. Chisholm
Danielle Leonard
Connie K. Chan
Colin Clemente Jones
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
cchan@altber.com
cjones@altber.com

*Attorney for Plaintiffs-Appellees*

Norman L. Eisen
Tianna Mays
Pooja Chaudhuri
Jacob Kovacs-Goodman
Elizabeth Westfall
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE #15180
Washington, DC 20003 (202) 601-8678
(202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org
pooja@democracydefenders.org
jacob@democracydefenders.org
elizabeth-contract@democracydefenders

*Attorney for Plaintiffs-Appellees*

**Additional counsel and affiliations on signature pages*

# **BRIEF IN SUPPORT OF REHEARING EN BANC**

In the time period leading up to the presently ongoing 2026 midterm election, high-ranking officials of the U.S. Department of Justice ("DOJ") and Department of Homeland Security ("DHS") engaged in an unprecedented and sustained campaign to intimidate, threaten, and coerce election officials, election workers, and voters. That campaign escalated dramatically in recent weeks and days, after States began counting votes and as Election Day approaches, with specific threats of criminal prosecution of any election worker who processes a ballot that DOJ and DHS claim, without credible basis, is ineligible.

The object of Defendants' threats is to force election officials to stop processing ballots in compliance with state law before, during, and after Election Day. Those threats are based on exactly the same lists debunked as invalid and unreliable in *United States v. California* ("*California*"), No. 26-7231, 2026 WL 3268272, at *6 (9th Cir. Oct. 30, 2026) (per curiam) ("The district court also found that the United States's process in creating the October List was not credible, and thus the United States's assertion that individuals on the October List are 'highly likely to be noncitizens' is also not credible."). Defendants have specifically threatened that these fundamentally flawed lists put *all* elections officials and workers who process such ballots on *actual notice* sufficient to give rise to aiding and abetting criminal liability. *See*, *e.g.*, Dkt. 29-1 (Moreles Decl.) Ex. A; Dkt. 19-7 (Evers Decl.) Ex. 32.

The purpose and effect of these threats are to coerce election officials across the country to alter or disregard their own duly enacted procedures, segregate

ballots, and disenfranchise voters. Thus, Defendants' stay application asks this Court to allow them to use threats, intimidation and coercive acts to achieve what this Court has already found they cannot do under the law: require state and local elections officials to segregate ballots of voters at federal officials' say so.

The Northern District of California acted swiftly to temporarily halt threats and other acts of intimidation in a non-appealable TRO, and set an injunction hearing in 14 days. Defendants then simultaneously asked the District Court to stay or dissolve the TRO and appealed to and requested a stay from this Court. During the hearing by the District Court earlier *today* on Defendants' request to modify or dissolve the TRO, Defendants *admitted* that the lists on which they based their threats of prosecution were replete with a "high error rate" and that the federal government would not suffer any immediate harm from waiting until after the current election was complete to investigate fraud. *See* Ex. C at 33.

The panel decision issued today nonetheless grants a stay of the TRO and thus permits Defendants to reengage in threats and other acts of intimidation and coercion during an ongoing election. Given the significance of the issues, Plaintiffs respectfully request that this Court rehear this matter *en banc* on an emergency basis and, as soon as possible, deny Defendants' request for a stay.

## ARGUMENT

This case clearly meets the standards for rehearing *en banc* as described herein. The panel decision granting a stay pending appeal conflicts with the decision in *California*, 2026 WL 3268272, at *4. As Chief Judge Murguia states in her dissent from the panel decision, "These two decisions cannot be reconciled."

The panel's opinion is inconsistent with decisions by other United States courts of appeals regarding the Voting Rights Act. The panel opinion also conflicts with multiple decisions of this Court in effectively disregarding the requirement that a stay applicant demonstrate irreparable injury. And the panel erroneously decides numerous questions of exceptional importance. *See* Fed. R. App. P. 40(b)(2).

**A. Elections Clause**

The panel's holding that the federal Executive Branch does not exceed its authority under the Elections Clause when it threatens state and county elections officials with criminal prosecution in order to coerce them to disregard their own lawful elections procedures conflicts with another decision of this Court, *United States v. California*, __ F. 4th __, 2026 WL 3268272, at *3 (9th Cir. Oct. 30, 2026), *application for stay denied*, No. 26A624 (U.S. Nov. 2, 2026). As the panel dissent explains, this Court held just three days ago in *California* "that the United States has no authority to compel state elections officials to disregard their own lawful election procedures." Dissent at 1 (Murguia, J., dissenting).

A decision holding that the Executive Branch "may compel state and local officials to comply with their preferred procedure on pain of prosecution," Dissent at 5, conflicts directly with that ruling. Here, as in *California*, Congress has not preempted the States' constitutional authority over elections procedures. And here, as in *California*, Defendants rely only on a criminal statute, 18 U.S.C. §611, as their authority to do so. So there can be no question that the Executive Branch lacks the authority to compel state and local election officials to segregate and set aside ballots of registered voters who appear on Defendants' flawed lists. The

panel majority's conclusion that there is no conflict between the two decisions because here the federal government is merely "request[ing]" that elections officials disregard state law completely ignores the fact that these "requests" are accompanied by threats of criminal prosecution. As the panel dissent explains:

> If Defendants lack the authority to *directly* compel state election officials to implement their preferred state elections procedures, it is difficult to imagine how Defendants may *indirectly* coerce state election officials to disregard state eligibility procedures through threat of prosecution. *See Coal. for Humane Immigr. Rts v. Dep't of Homeland Sec.*, No. 26-cv-3072, at *15 (D.D.C. Cir. Nov. 2, 2026) ("It is thus highly doubtful that Section 611(a) could be constitutionally applied to criminalize state officials' compliance with state-law procedures for counting ballots cast by registered voters."). The majority would permit Defendants to preempt state election procedures by threat of prosecution.

Dissent at 6.

*California* was decided correctly, and this panel wrongly decided an exceptionally important question of law. The Elections Clause of the U.S. Constitution "expressly dictates which sovereign has the authority to prescribe the manner by which Congressional elections are conducted." *California*, 2026 WL 3268272, at *3. Providing that "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations," U.S. Const. art. I, §4, cl. 1, the Clause "invests the States with responsibility for the mechanics of congressional elections," unless Congress has acted to preempt state legislative choices. *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also Storer v. Brown*, 415 U.S. 724, 730 (1974); *Arizona v. Inter-Tribal Council*

*of Arizona, Inc.*, 570 U.S. 1, 9 (2013) ("*ICTA*")). Congress has not done so here: "Nothing in § 611, a statute that criminalizes voting by a noncitizen, preempts California's comprehensive statutory scheme that has been duly enacted under the Elections Clause." *California*, 2026 WL 3268272 at *4. Defendants seek this Court's license to use prosecution threats to displace state elections law by dictating "the mechanics of congressional elections." *Foster v. Love*, 522 U.S. 67, 69 (1997). But that runs directly contrary to the Elections Clause's allocation of authority. "Because Congress has not exercised the specific power granted to it under the Elections Clause to override California's established laws for challenging ballots or removing ineligible voters," permitting the United States "to prescribe how [California] must process ballots would 'override the plain and manifest dictates of the Constitution itself.'" *California*, 2026 WL at *5 (quoting *Ex parte Siebold*, 100 U.S. 371, 392 (1879)). Defendants' policy of issuing criminal prosecution threats to elections officials and workers is therefore *ultra vires* in that it exceeds their constitutional and statutory authority and is therefore unlawful.

Finally, granting the stay on the eve of Election Day, which will lift the prohibition on threats, intimidation and coercion that directly interfere with an ongoing election, allows the federal government to coerce the alteration of established election procedures and thereby violates *Purcell v. Gonzalez*, 549 U.S. 1 (2006). *See California*, 2026 WL 3268272 at *7 ("The *Purcell* principle applies with even greater force when, as here, an election is already underway."). The panel opinion is therefore contrary to this decision of the United States Supreme Court as well.

**B. Voting Rights Act**

Further, the panel's holding that there is no private right of action to enforce Section 11(b) of the Voting Rights Act is inconsistent with this Court's ruling in *California Nurses Ass'n v. Mullin* (*"CNA II"*), 26-7139, 2026 WL 3268397 (9th Cir. Oct. 30, 2026), and with every other Circuit Court to consider a private claim under Section 11(b). In *CNA II*, this Court denied the federal government's motion for a stay pending appeal of a preliminary injunction, holding that "the district court properly concluded that CNA/NNU has associational standing to pursue an intimidation claim under Section 11(b) of the Voting Rights Act." 2006 WL 3268397, at *8.

Similarly, every Circuit Court to have considered a private claim under Section 11(b) has accepted that such a cause of action is available. *See, e.g.*, *Colo. Mont. Wyo. State Area Conf. of the NAACP v. Smith*, 180 F.4th 1266 (10th Cir. 2026) (reversing district court's judgment in favor of defendants in 11(b) suit brought by private plaintiffs); *Democratic Nat. Comm. v. Republican Nat. Comm.*, 673 F.3d 192, 204 (3d Cir. 2012) (declining to vacate consent decree based on private enforcement of Section 11(b)); *Bershatsky v. Levin*, 99 F.3d 555 (2d Cir. 1996) (per curiam) (dismissing claim of voter intimidation based on failure to state a claim, rather than lack of private right of action); *Whatley v. City of Vidalia*, 399 F.2d 521 (5th Cir. 1968) (prohibiting state court remand of voter intimidation claim brought by private citizens).

Both the U.S. Supreme Court and Circuit Courts have likewise recognized an implied private right of action under other sections of the VRA, including

Section 2, Section 5, and Section 10. *See, e.g.*, *Morse v. Republican Party of Virginia*, 517 U.S. 186, 234-35 (1996) (holding that there is an implied right of action under Section 10 of the VRA and observing that, "[a]lthough §2, like §5, provides no right to sue on its face, "the existence of the private right of action under Section 2 … has been clearly intended by Congress since 1965," and squarely rejecting that Attorney General enforcement supplants private right of action); *Robinson v. Ardoin*, 86 F.4th 574, 587-88 (5th Cir. 2023) (holding that "Section 2 provides for a private right of action" and collecting cases holding the same); *Mixon v. Ohio*, 193 F.3d 389, 406 (6th Cir. 1999) (holding that "[a]n individual may bring a private cause of action under Section 2"); *Ala. State Conf. of NAACP v. Alabama*, 949 F.3d 647, 652 (11th Cir. 2020), *vacated as moot*, 141 S. Ct. 2618 (2021) (holding that the VRA is "enforceable by private parties," and noting that "[f]or more than fifty years, private parties have sued … under the VRA to enforce the substantive guarantees of the Civil War Amendments). Section 11(b) effectuates the Fourteenth and Fifteenth Amendments just the same as these other provisions of the Act, which likewise have no express cause of action. The panel decision's holding that private parties have no right of action to enforce Section 11(b) of the VRA conflicts with this weight of authority.

**C. Irreparable Harm**

The panel decision further conflicts with well-established Supreme Court and Ninth Circuit authority holding that "[a]n applicant for a stay pending appeal must show that a stay is necessary to avoid *likely* irreparable injury to the applicant while the appeal is pending." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir.

2020) (emphasis added) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009) (noting "possibility of irreparable injury" is insufficient)). "*Nken* instruct[s] 'that if the petition[er] has not made a certain threshold showing regarding irreparable harm … then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (citation omitted); *accord CNA II*, 2026 WL 3268397, at *6-7.

The panel majority's decision cites no evidence (because Defendants submitted none) supporting its one-line conclusion that, "Absent a stay, the Government will be irreparably injured." Slip Op. at 7 (citing *Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 4 (2025) (mem.) (Kavanaugh, J., concurring in the grant of application for stay)). But under established Ninth Circuit law, "[t]he government cannot meet this burden [to establish irreparable harm] by submitting conclusory factual assertions and speculative arguments that are unsupported in the record." *Doe #1*, 957 F.3d at 1059-60; *see, e.g.*, *CNA II*, 2026 WL 3268397, at *6 (denying federal government's stay request for failure to establish irreparable injury because their reliance on declarations containing statements that HSI agents "'may be deterred from performing their law enforcement functions'" was "speculative" (citation modified)).

The panel decision's reasoning is irreconcilable with *California*. There, the Federal Government claimed the same interest in preventing noncitizens from voting, based on the same lists of alleged noncitizens at issue in this case. The Ninth Circuit rejected the federal government's claims of irreparable harm, based on the district court's findings in that case that "the United States's process in

creating the October List was not credible, and thus the United States's assertion that individuals on the October List are 'highly likely to be noncitizens' is also not credible." *California*, 2026 WL 3268272, at *6. The record in this case involves the exact same lists and the exact same processes by which the lists were created, and likewise demonstrates that Defendants' lists of alleged noncitizens were compiled from questionable sources using unreliable methodologies and are riddled with errors. *See* Dkt. 19-6 [App. 529-559]; Dkt. 24 [App. 811-816].

Indeed, counsel for Defendants admitted in open court earlier today during a hearing before the District Court that it is "fair" to say that the lists contain a "high error rate." *See* Ex. C at 33 ("The Court: Would you agree there's a high error rate, not nominal, but a high error rate? Mr. Kao: The list itself. The Court: Yes, sir. Mr. Kao: I think that's a fair statement."). Defendants have similarly acknowledged in other court submissions that their lists of purported noncitizens in fact include U.S. citizens. *See United States v. Amore,* No. 25-CV-639 (D.R.I. Mar. 26, 2026), Dkt. 47 (Hr'g Tr. at 51-53); *Common Cause v. U.S. Dep't of Just.*, No. CV 26-1352 (SLS), 2026 WL 3033772, at *8 (D.D.C. Oct. 9, 2026). As the Ninth Circuit explained in *California*, the district court's finding that the federal government's lists are not credible, "along with California's established procedures for ensuring voter eligibility, substantially weaken the United States's claim that it is likely to suffer irreparable harm from ballots being cast by noncitizens." 2026 WL 3268272, at *6.

Moreover, as the panel dissent explains, "Defendants are not harmed by state and local officials' compliance with lawful elections procedures," and the TRO in

no way precludes "lawful investigations or prosecutions of voter fraud." Dissent at 7-8. The panel states only, "The Government's injury—being barred from requesting that the states segregate ballots from suspected noncitizens—cannot be undone after the fact." Op. at 7. But Defendants *conceded* at the hearing earlier today that no harm would result in the immediate period if a stay were not entered: By their own admission, Defendants stated that "the purity of the list" of alleged non-citizens "can be determined at any point in time." Ex. C at 34. And when asked by the District Court, Defendants' counsel stated, "I don't know if [assessing valid voters] can actually be done between now and tomorrow." *Id.* at 24. Indeed, Defendants conceded that "[t]he entire reason that we don't decide on November 4th who won the election is because the votes need to be certified." *Id.* at 34. So, Defendants represented, "as part of this certification of a vote, there's no reason that" assessment of whether a State's voter rolls contain alleged non-citizens "cannot happen after[]" an election. *Id.*

**D. Balance of Equities**

Finally, Defendants' concessions and the record itself make clear that Defendants' alleged harm is negligible relative to the harm brought about by the threats and intimidation that Defendants have repeatedly levied against the Union Plaintiffs' election worker members. The harm emanating from Defendants' threats of criminal prosecution, and the possibility that Defendants' actions will disrupt the processing of lawful ballots submitted by citizens, far outweighs Defendants' inconsistent representations about whatever harm they feel the TRO inflicts upon them.

As the District Court has twice concluded, the threatened elections workers and the voters whose ballots are threatened face irreparable injury from this stay. The panel majority is wrong in concluding that any injury could be addressed once a prosecution is brought. Plaintiffs have demonstrated harm that derives from the threat of prosecution, and courts have consistently held that when constitutional issues are at stake a litigant need not wait to be criminally charged—and then defend against that charge—before challenging government misconduct. As in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), the Union Plaintiffs' election worker members face a Hobson's choice: "a forced choice between acquiescing to a law that the plaintiff believe[s] to be unconstitutional and violating the law under pain of liability [is] sufficient to establish irreparable injury." *City of Chicago v. Sessions*, 264 F.Supp.3d 933, 950 (N.D. Ill. 2017) (citing *Morales*, 504 U.S. at 381).[1] This Court has "routinely held" that the "double bind" presented by a Hobson's choice constitutes irreparable harm. *Cnty. of King v. Turner*, 189 F.4th 819, 839 (9th Cir. 2026). Here, as the target of Defendants' threats, Plaintiffs can either comply with federal and state election laws and subject themselves to criminal prosecution under Defendants' authority, or Plaintiffs can acquiesce to

---

[1] *Cf. also*, *e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014): *Steffel v. Thompson*, 415 U.S. 452, 459 (1974); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007); *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 618 (9th Cir. 1999); *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024) ("the substantial threat of enforcement, and not the likelihood that any such enforcement action would ultimately need to sanctions, drives our analysis"; "For pre-enforcement plaintiffs, the injury is the anticipated enforcement of the challenged statute in the future.").

Defendants' unconstitutional demands. So "a very real penalty attaches to [Plaintiffs] regardless of how they proceed." *Am. Trucking Associations, Inc. v. City of Los* Angeles, 559 F.3d 1046, 1057-58 (9th Cir. 2009). And given the looming injury of criminal prosecution, were it to "materialize[]," Plaintiffs are "poised to incur" imminent harm as a consequence of Defendants' actions. *Cf. Clark v. City of Seattle*, 899 F.3d 802, 812 (9th Cir. 2018) (concluding plaintiff drivers "cannot claim for themselves any imminent injuries that [rideshare companies] are poised to incur"). Under *Morales*, the Hobson's choice faced by Plaintiffs is sufficient to establish irreparable injury here.

## CONCLUSION

For the reasons discussed, the Court should grant rehearing *en banc*.

The panel opinion is attached as Exhibit A to this petition. The district court's order this evening denying a stay pending appeal and making additional findings is attached hereto as Exhibit B. Plaintiffs further call the Court's attention to, and attach hereto as Exhibit C, a "Realtime/Rough Draft" transcript of the District Court's November 2, 2026, hearing, circulated to Plaintiffs-Appellees by the court reporter for the District Court.

DATED: November 2, 2026 Respectfully submitted,

Stacey Leyton
Barbara J. Chisholm
Danielle Leonard
Connie K. Chan
Colin Clemente Jones
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
cchan@altber.com
cjones@altber.com

By: */s/ Stacey Leyton*

*Attorney for Plaintiffs-Appellees*

Norman L. Eisen
Tianna Mays
Pooja Chaudhuri
Jacob Kovacs-Goodman
Elizabeth Westfall
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE #15180
Washington, DC 20003 (202) 601-8678
(202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org
pooja@democracydefenders.org
jacob@democracydefenders.org
elizabeth-contract@democracydefenders.org

By: */s/ Norman L. Eisen*

*Attorney for Plaintiffs-Appellees*

Jared Fletcher Davidson
PROTECT DEMOCRACY PROJECT
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
jared.davidson@protectdemocracy.org

Naomi Gilens
Anna Dorman
Ori Lev
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave. NW, Suite #163
Washington, DC 20006
(202) 579-4582
naomi.gilens@protectdemocracy.org
Anna.dorman@protectdemocracy.org
ori.lev@protectdemocracy.org

Benjamin L. Berwick
15 Main Street, Suite 312
Watertown, MA 02472
Tel.: (202) 579-4582
ben.berwick@protectdemocracy.org

By: *<u>/s/ Jared Fletcher Davidson</u>*

*Attorney for Plaintiffs-Appellees*

Steven K. Ury
SERVICE EMPLOYEES
INTERNATIONAL UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

By: *<u>/s/ Steven K. Ury</u>*

*Attorney for Plaintiffs-Appellees*

Teague Paterson
Matthew Blumin
Georgina Yeomans
AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL
EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org
GYeomans@afscme.org

By: */s/ Teague Paterson*

*Attorney for Plaintiffs-Appellees*

Stuart Naifeh
John S. Cusick
Brittany Carter
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006

I. Sara Rohani
Hayley Hahn
Victor Olofin
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
700 14th Street N.W., Ste. 600
Washington, DC 20005
snaifeh@naacpldf.org

By: */s/ Stuart Naifeh*

*Attorney for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this response complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it is proportionally spaced and has a typeface of 14 points. It contains 3,256 words in compliance with Circuit Rules 35(b)(2).

Dated: November 2, 2026

*_/s/ Stacey M. Leyton_*
Stacey M. Leyton

## FILER'S ATTESTATION

Pursuant to Circuit Rule 25-5(e), the filer attests that all other signatories to this document concur in the content of, and have authorized, this filing.

Dated: November 2, 2026

*_/s/ Stacey M. Leyton_*
Stacey M. Leyton