No. 26-7303

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

Service Employees International Union, AFL-CIO, et al.,
*Plaintiffs-Appellees*,
v.
United States Department of Justice et al.,
*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
No. 3:26-cv-12800-TLT
The Honorable Judge Trina L. Thompson

# PLAINTIFFS-APPELLEES' PETITION FOR FULL COURT EN BANC REHEARING

Stacey Leyton
Barbara J. Chisholm
Danielle Leonard
Connie K. Chan
Colin Clemente Jones
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
cchan@altber.com
cjones@altber.com

*Attorney for Plaintiffs-Appellees*

Norman L. Eisen
Tianna Mays
Pooja Chaudhuri
Jacob Kovacs-Goodman
Elizabeth Westfall
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE #15180
Washington, DC 20003 (202) 601-8678
(202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org
pooja@democracydefenders.org
jacob@democracydefenders.org
elizabeth-contract@democracydefenders.org

*Attorney for Plaintiffs-Appellees*

**Additional counsel and affiliations on signature pages*

# BRIEF IN SUPPORT OF PETITION FOR FULL COURT EN BANC REHEARING

This case involves actions by federal government officials to interfere with the casting and counting of ballots during an ongoing election by way of threats to election workers that are unprecedented in the history of this country, and therefore calls for unprecedented measures by this Court. Today, on Election Day, the en banc court gives federal officials the green light to threaten, intimidate and coerce state and local elections officials into setting aside ballots already cast. In doing so, it disregards the U.S. Constitution's allocation of authority over federal elections to the States, as limited by Congress only in circumstances inapplicable here. In light of these unique circumstances, Plaintiffs request full court en banc review of the limited en banc court's reinstatement of a stay that now permits federal authorities carte blanche authority to interfere with an election the Constitution requires to be conducted by state and local officials. Federalism principles of the highest order, embedded in our Constitution, require correction of this erroneous decision by the full Court.

In the time period leading up to the presently ongoing 2026 midterm election, high-ranking officials of the U.S. Department of Justice ("DOJ") and Department of Homeland Security ("DHS") engaged in an unprecedented and sustained campaign to intimidate, threaten, and coerce election officials, election workers, and voters. That campaign escalated dramatically in recent weeks and days, after States began counting votes and as Election Day approaches, with

specific threats of criminal prosecution of any election worker who processes a ballot that DOJ and DHS claim, without credible basis, is ineligible.

The object of Defendants' threats is to force election officials to stop processing ballots in compliance with state law before, during, and after Election Day. The concern continues after Election Day, as votes are tabulated and certified in the coming weeks prior to the deadlines for certification of the election. Those threats are based on exactly the same lists debunked as invalid and unreliable in *United States v. California* ("*California*"), No. 26-7231, 2026 WL 3268272, at *6 (9th Cir. Oct. 30, 2026) (per curiam), *application for stay denied*, No. 26A624 (U.S. Nov. 2, 2026) ("The district court also found that the United States's process in creating the October List was not credible, and thus the United States's assertion that individuals on the October List are 'highly likely to be noncitizens' is also not credible."). Defendants have specifically threatened that these fundamentally flawed lists put *all* elections officials and workers who process such ballots on *actual notice* sufficient to give rise to aiding and abetting criminal liability. *See*, *e.g.*, N.D. Cal. Dkt. 29-1 (Moreles Decl.) Ex. A; N.D. Cal. Dkt. 19-7 (Evers Decl.) Ex. 32.

The purpose and effect of these threats is to coerce election officials across the country to alter or disregard their own duly enacted procedures, segregate ballots, and disenfranchise voters. Thus, Defendants' stay application asks this Court to allow them to use threats, intimidation and coercive acts to achieve what this Court has already found they cannot do under the law: require state and local

elections officials to segregate ballots of voters at federal officials' say so. As Chief Judge Murguia's en banc dissent warns:

> As the en banc court majority reinstates the stay on the morning of Election Day, state and local election officials and workers must choose between complying with two conflicting opinions of our court: follow our decision in California and risk prosecution by the United States or accede to the Defendants' demands and risk violating state law. We should not force this impossible decision on election officials and workers on Election Day or the days that follow.

En Banc Dissent at 1 (Murguia, J.).

The Northern District of California acted appropriately and swiftly to temporarily halt threats and other acts of intimidation in a non-appealable TRO, and set an injunction hearing in 14 days. Defendants then simultaneously asked the District Court to stay or dissolve the TRO and appealed to and requested a stay from this Court. During the hearing by the District Court yesterday (November 2, 2026) on Defendants' request to modify or dissolve the TRO, Defendants *admitted* that the lists on which they based their threats of prosecution were replete with a "high error rate" *and* that the federal government would not suffer any immediate harm from waiting until after the current election was complete to investigate fraud. *See* Ex. D at 35-36. As such, Defendants acknowledged that they cannot establish likely irreparable injury in the absence of a stay, which is a prerequisite to the issuance of such a stay under longstanding precedent of the U.S. Supreme Court and this Court.

The en banc decision issued today nonetheless reinstates the stay of the TRO and thus permits Defendants to reengage in threats and other acts of intimidation

and coercion during an ongoing election. As the en banc dissent by Judge Desai warns, "[r]einstating the stay on the morning of Election Day … creates a serious risk of disenfranchisement" as the federal "government has made explicit and escalating threats of prosecution that extend far beyond a mere request to sequester ballots" that will "have a 'severe chilling effect' on elections officials" and "create a risk that citizens will be deprived of their fundamental right to cast a ballot in today's election." En Banc Dissent at 2 (Desai, J.).

Given the significance of the issues, Plaintiffs respectfully request that this Court grant full court en banc rehearing on an emergency basis to vacate the en banc court's decision and, as soon as possible, deny Defendants' request for a stay. *See* Fed. R. App. P. 40(b); Ninth Cir. R. 40-3; Ninth Cir. Gen. Order 5.8. Because the TRO at issue expires by its terms in less than two weeks, any further issues in this case can be addressed in the normal course of trial and appellate proceedings.

Because Defendants have not demonstrated irreparable harm, and because Plaintiffs have established likely success on the Elections Clause, there is no need for this Court to reach the question whether Plaintiffs' Voting Rights Act claim is likely to succeed.

**ARGUMENT**

This case clearly meets the standards for full court rehearing en banc as described herein. The en banc decision granting a stay pending appeal conflicts with U.S. Supreme Court precedent and with the correctly decided panel decision in *California*, 2026 WL 3268272, at *4, which hold that the federal Executive Branch lacks the authority to override state laws governing elections procedures

and mechanics. As Chief Judge Murguia states in her dissent, "These two decisions cannot be reconciled." En Banc Dissent at 1 (Murguia, J., dissenting). The en banc opinion also conflicts with multiple decisions of this Court and by the U.S. Supreme Court in effectively disregarding the requirement that a stay applicant demonstrate irreparable injury. The en banc court also reinstates a panel decision that erroneously decides numerous questions of exceptional importance. *See* Fed. R. App. P. 40(b)(2).

**A. Elections Clause**

The panel decision holding that the federal Executive Branch does not exceed its authority under the Elections Clause when it threatens state and county elections officials with criminal prosecution in order to coerce them to disregard their own lawful elections procedures, which the en banc decision reinstates, conflicts directly with *California*, 2026 WL 3268272, at *3. It is also contrary to long established U.S. Supreme Court and Circuit precedent regarding the constitutional authority of States over elections procedures.

As Chief Judge Murguia's en banc dissent explains, this Court held just four days ago in *California* "that the United States has no authority to compel state elections officials to disregard their own lawful election procedures." En Banc Dissent at 1 (Murguia, J.). A decision holding that the Executive Branch "*may* compel state and local officials to comply with their preferred procedure on pain of prosecution," *id.* at 5, conflicts directly with that ruling. Here, as in *California*, Congress has not preempted the States' constitutional authority over elections procedures. And here, as in *California*, Defendants rely only on a criminal statute,

18 U.S.C. §611, as their authority to do so. So there can be no question that the Executive Branch lacks the authority to compel state and local election officials to segregate and set aside ballots of registered voters who appear on Defendants' flawed lists.

The en banc court's conclusion that there is no conflict between the two decisions because here the federal government is merely "request[ing]" that elections officials disregard state law completely ignores the fact that these "requests" are accompanied by threats of criminal prosecution. As Chief Judge Murguia's dissent explains:

> If Defendants lack the authority to *directly* compel state election officials to implement their preferred state elections procedures, it is difficult to imagine how Defendants may *indirectly* coerce state election officials to disregard state eligibility procedures through threat of prosecution. *See Coal. for Humane Immigr. Rts v. Dep't of Homeland Sec.*, No. 26-cv-3072, at *15 (D.D.C. Cir. Nov. 2, 2026) ("It is thus highly doubtful that Section 611(a) could be constitutionally applied to criminalize state officials' compliance with state-law procedures for counting ballots cast by registered voters."). The majority would permit Defendants to preempt state election procedures by threat of prosecution.

En Banc Dissent (Murguia, J.) at 6-7; see also *Coalition for Humane Immigrant Rts. v. Dep't of Homeland Sec.*, No. 26-3072 (JEB), 2026 WL 3306646, at *15 (D.D.C. Nov. 2, 2026) ("*CHIRLA*") ("[A]lthough it invokes a criminal statute, the Executive Branch plainly is attempting to unilaterally impose additional procedural requirements for the mailing and counting of ballots of suspected non-citizens because it believes that the operative state procedures are inadequate.").

*California* was decided correctly, and the en banc court wrongly decided an exceptionally important question of law. The Elections Clause of the U.S. Constitution "expressly dictates which sovereign has the authority to prescribe the manner by which Congressional elections are conducted." *California*, 2026 WL 3268272, at *3. Providing that "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations," U.S. Const. art. I, §4, cl. 1, the Clause "invests the States with responsibility for the mechanics of congressional elections," unless Congress has acted to preempt state legislative choices. *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also Storer v. Brown*, 415 U.S. 724, 730 (1974); *Arizona v. Inter-Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013) ("*ITCA*")). That is, unless Congress has exercised its Elections Clause preemptive authority, States retain the "authority to provide a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns." *Roudebush v. Hartke*, 405 U.S. 15, 24 (1972).[1]

[1] The Framers of the U.S. Constitution had good reason for this allocation of constitutional authority. They recognized the impossibility of a single regulation "which would have been always applicable to every probable change in the situation of the country," and so determined "that a discretionary power over elections ought to exist somewhere." The Federalist No. 59 (A. Hamilton). The Framers thus "submitted the regulation of elections for the federal government, in

Congress has not exercised its preemptive authority as relevant here: "Nothing in § 611, a statute that criminalizes voting by a noncitizen, preempts California's comprehensive statutory scheme that has been duly enacted under the Elections Clause." *California*, 2026 WL 3268272 at *4. Section 611 regulates who may vote, not the "Times, Places and Manner" of elections, so Defendants cannot invoke the Elections Clause to escape ordinary federalism constraints. *ITCA*, 570 U.S. at 9, 13–17; *Bond*, 572 U.S. at 857–60. Even if § 611 *were* an Elections Clause statute, moreover, it does not regulate ballot processing and does not require sequestration of ballots. At most, Defendants object that state officials are not helping them enforce the federal government's priorities. But "the possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption." *Kansas v. Garcia*, 589 U.S. 191, 212 (2020); *see also ITCA*, 570 U.S. at 9; *Kansas v. Garcia*, 589 U.S. 191, 212 (2020).

The en banc decision thus improperly grants the Executive Branch license to use prosecution threats to displace state elections law by dictating "the mechanics of congressional elections." *Foster*, 522 U.S. at 69; *accord CHIRLA*, 2026 WL

---

the first instance," to the States, where such regulation would "be both more convenient and more satisfactory." *Id.* They "reserved" *only to the federal legislative branch* "a right to interpose" regulations where the need arose. *Id.* The purpose of this allocation of authority was to "preserve and restore to the people their equal and sacred rights of election" against "the influence of ambitious or popular characters, or in times of popular commotion, and when faction and party spirit run high." The Massachusetts Convention: Convention Debates (Jan. 16, 1788), reprinted in 6 Ratification of the Constitution by the States: Massachusetts 1217–18 (J. Kaminski et al. eds., 2000). The Executive Branch lacks any authority in this area.

3306646, at *14. That runs directly contrary to the Elections Clause's allocation of authority. "Because Congress has not exercised the specific power granted to it under the Elections Clause to override California's established laws for challenging ballots or removing ineligible voters," permitting the United States "to prescribe how [California] must process ballots would 'override the plain and manifest dictates of the Constitution itself.'" *California*, 2026 WL at *5 (quoting *Ex parte Siebold*, 100 U.S. 371, 392 (1879)).

In the absence of Elections Clause authority, the Executive Branch's efforts to dictate the functioning of state and local elections officials is ultra vires and violates the Tenth Amendment, which provides that States retain all "powers not delegated to the United States by the Constitution, nor prohibited by it to the States." U.S. Const. 10th Amend. Those powers that the Tenth Amendment reserves to the States include plenary authority over the structure of their governments and control of their officers (except as modified by Congress as to federal elections pursuant to the Elections Clause). *See Gregory v. Ashcroft*, 501 U.S. 452, 460, 462 (1991); *Shelby County v. Holder*, 570 U.S. 529, 543 (2013).

Finally, as Judge Desai's en banc dissent explains, reinstating the stay on Election Day "creates precisely the type of chaos and confusion that the Supreme Court repeatedly cautions against." En Banc Dissent (Desai, J.) at 2 (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006)). By lifting the injunction barring threats, intimidation and coercion that directly interfere with an ongoing election—which have escalated dramatically in the days and weeks immediately prior to a federal election—the en banc decision allows the federal government to coerce the

alteration of established election procedures and thereby violates the *Purcell* principle. *See also California*, 2026 WL 3268272 at *7 ("The *Purcell* principle applies with even greater force when, as here, an election is already underway."). The en banc decision is therefore contrary to this decision of the United States Supreme Court as well.

### B. Irreparable Harm

The en banc decision further conflicts with well-established Supreme Court and Ninth Circuit authority holding that "[a]n applicant for a stay pending appeal must show that a stay is necessary to avoid *likely* irreparable injury to the applicant while the appeal is pending." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (emphasis added) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009) (noting "possibility of irreparable injury" is insufficient)). "*Nken* instruct[s] 'that if the petition[er] has not made a certain threshold showing regarding irreparable harm … then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (citation omitted); *accord Cal. Nurses Ass'n v. Mullin* (*"CNA"*), 26-7139, 2026 WL 3268397, *6-7 (9th Cir. Oct. 30, 2026).

The panel majority's decision cites no evidence (because Defendants submitted none) supporting its one-line conclusion that, "Absent a stay, the Government will be irreparably injured." Op. at 7 (citation omitted). But under established Ninth Circuit law, "[t]he government cannot meet this burden [to establish irreparable harm] by submitting conclusory factual assertions and speculative arguments that are unsupported in the record." *Doe #1*, 957 F.3d at

1059-60; *see, e.g.*, *CNA*, 2026 WL 3268397, at *6 (denying federal government's stay request for failure to establish irreparable injury because their reliance on declarations containing statements that HSI agents "'may be deterred from performing their law enforcement functions'" was "speculative" (citation modified)).

The panel decision's reasoning is irreconcilable with *California*. There, the federal government claimed the same interest in preventing noncitizens from voting, based on the same lists of alleged noncitizens at issue in this case. This Court rejected those claims of irreparable harm, based on the district court's findings in that case that "the United States's process in creating the October List was not credible, and thus the United States's assertion that individuals on the October List are 'highly likely to be noncitizens' is also not credible." *California*, 2026 WL 3268272, at *6. The record in this case involves the exact same lists and the exact same processes by which the lists were created, and likewise demonstrates that Defendants' lists of alleged noncitizens were compiled from questionable sources using unreliable methodologies and are riddled with errors. *See* N.D. Cal. Dkt. 19-6; N.D. Cal. Dkt. 24.

Indeed, counsel for Defendants admitted in open court yesterday before the District Court that it is "fair" to say the lists contain a "high error rate." *See* Ex. D at 35 ("The Court: Would you agree there's a high error rate, not nominal, but a high error rate? Mr. Kao: The list itself. The Court: Yes, sir. Mr. Kao: I think that's a fair statement."). Defendants have similarly acknowledged in other court submissions that their lists of purported noncitizens in fact include U.S. citizens.

*See United States v. Amore,* No. 25-CV-639 (D.R.I. Mar. 26, 2026), Dkt. 47 (Hr'g Tr. at 51-53); *Common Cause v. U.S. Dep't of Just*., No. CV 26-1352 (SLS), 2026 WL 3033772, at *8 (D.D.C. Oct. 9, 2026); *see also CHIRLA*, 2026 WL 3306646, at *3-4 (crediting expert's analysis confirming that Defendants' list of 20,000 alleged noncitizen voters in California contains "at least 22" "certain" citizen members of plaintiff organization and potentially as many as 6,000). As explained in *California*, the district court's finding that the federal government's lists are not credible, "along with California's established procedures for ensuring voter eligibility, substantially weaken the United States's claim that it is likely to suffer irreparable harm from ballots being cast by noncitizens." 2026 WL 3268272, at *6; *accord* En Banc Panel Dissent (Murguia, J.) at 8 (given unreliability of the lists, "Defendants' efforts are far more likely to disenfranchise eligible voters than they are to prevent noncitizen voting, hindering Defendants' important interest in ensuring that the votes of eligible voters are counted").

Moreover, as Chief Judge Murguia's en banc dissent explains, "Defendants are not harmed by state and local officials' compliance with lawful elections procedures," and the TRO in no way precludes "lawful investigations or prosecutions of voter fraud." En Banc Dissent (Murguia, J.) at 8-9. The panel decision reinstated by the en banc court states only, "The Government's injury—being barred from requesting that the states segregate ballots from suspected noncitizens—cannot be undone after the fact." Op. at 7. But Defendants *conceded* at the District Court hearing yesterday that no harm would result in the immediate period if a stay were not entered: By their own admission, Defendants stated that

"the purity of the list" of alleged non-citizens "can be determined at any point in time." Ex D. at 36; *see also id.* at 35. And when asked by the District Court, Defendants' counsel stated, "I don't know if [assessing valid voters] can actually be done between now and tomorrow." *Id.* at 26. Indeed, Defendants conceded that "[t]he entire reason that we don't decide on November 4th who won the election is because the votes need to be certified." *Id.* at 36. So, Defendants represented, "as part of this certification of a vote, there's no reason that" assessment of whether a State's voter rolls contain alleged non-citizens "cannot happen after[]" an election. *Id.*

As Chief Judge Murguia's en banc dissent notes, "Defendants 'do not point to evidence explaining that' their enforcement activities 'would be impracticable or impossible to conduct under the [TRO's] constraints." En Banc Dissent (Murguia, J.) at 9 (quoting *CNA*, 2026 WL 3268397, at *6). Given Defendants' complete failure to demonstrate irreparable harm, the en banc panel's decision to reinstate the stay defies controlling Supreme Court and Ninth Circuit authority.

**C. Balance of Equities**

Finally, the panel decision's analysis of the balance of equities and the public interest is inconsistent with U.S. Supreme Court and Ninth Circuit authority because it entirely ignores the irreparable harm to election workers, citizen voters, and the public caused by the Hobson's choice that Defendants have imposed on election workers. By commanding that election officials and workers disregard state law election procedures and set aside the ballots of lawfully registered voters, *upon pain of criminal prosecution*, Defendants' conduct creates an overwhelming

risk that citizens will be disenfranchised—an irreparable harm of the highest order with reverberating effects on our democracy.

Defendants have repeatedly threatened to prosecute election officials and workers under an aiding-and-abetting theory if they process and tabulate ballots cast by registered voters who appear on Defendants' lists, notwithstanding Defendants' admission that those lists have a "high error rate" and include confirmed U.S. citizens. *See* Ex. D at 35. As Judge Desai's en banc dissent explains, "the last-minute stay puts election administrators in an impossible dilemma. They are required under state law to process and tabulate registered voters' ballots. Yet the federal government is warning them that they will face criminal prosecution if they do so. These public servants face an impossible choice: fulfill their legal duties under state law and risk federal prosecution, or comply with the federal government's demands and violate their duties under state law." En Banc Dissent (Desai, J.) at 2; *accord* En Banc Dissent at 1 (Murguia, J.). This "impossible dilemma" is precisely the type of injury that the Supreme Court described in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), where "respondents were faced with a Hobson's choice: continually violate the Texas law and expose themselves to potentially huge liability; or violate the law once as a test case and suffer the injury of obeying the law during the pendency of the proceedings and any further review." *Id.* at *381.[2] This Court has "routinely held"

[2] *Cf., e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974); *MedImmune, Inc. v. Genentech, Inc.*, 549

that the "double bind" presented by a Hobson's choice constitutes irreparable harm. *See, e.g.*, *Cnty. of King v. Turner*, 189 F.4th 819, 839 (9th Cir. 2026); *Am. Trucking Associations, Inc. v. City of Los* Angeles, 559 F.3d 1046, 1057-58 (9th Cir. 2009).

The stakes of the Hobson's choice Defendants have put to election officials and workers could not be higher. As Judge Desai's en banc dissent explains, "[r]einstating the stay on the morning of Election Day … creates a serious risk of disenfranchisement. … Without an injunction in place, these threats have a 'severe chilling effect' on election officials who fear reprisal 'for simply carrying out [their] jobs' as required by state law, and they create a risk that citizens will be deprived of their fundamental right to cast a ballot in today's election." En Banc Dissent (Desai, J.) at 2. Indeed, Defendants concede that their demand to set aside ballots encompasses citizen voters on their lists. *See* Ex D. at 35; *cf. CHIRLA*, 2026 WL 3306646, at *3-4 (finding citizens on Defendants' lists). If election workers, fearing Defendants' credible threats of criminal prosecution, succumb to Defendants' coercive demands, citizen voters will be irreparably disenfranchised. *Id.*; *see also, e.g.*, Transcript of Proceedings Held on Oct. 27, 2026 at 29-30, 81, *United States v. California*, No. 2:26-cv-12025 (C.D. Cal. Oct. 28, 2026), ECF No. 150 (explaining that Defendants' proposed ballot set-aside procedures are "impossible" to implement prior to "the early December certification deadline").

---

U.S. 118, 128-29 (2007); *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024).

The public has a paramount interest in protecting the right to vote of all U.S. citizens and in ensuring the administration of free and fair elections, which are "the very foundation of our republican form of government." *Reynolds v. Sims*, 377 U.S. 533, 564 n.41 (1967); *see Am. Encore v. Fontes*, 152 F.4th 1097, 1120 (9th Cir. 2025) ("Vindication of constitutional rights is always in the public interest."). "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). The en banc decision gravely erred in ignoring these profound interests.

## CONCLUSION

For the reasons discussed, the Court should grant full court rehearing *en banc,* and vacate the en banc order and panel decision.

The en banc order is attached as Exhibit A to this petition. The panel opinion is attached as Exhibit B. The District Court's order yesterday evening denying a stay pending appeal and making additional findings is attached as Exhibit C. The court reporter's transcript of the District Court's November 2, 2026, hearing is attached as Exhibit D. The District Court's original TRO order is attached as Exhibit E.

DATED: November 3, 2026 Respectfully submitted,

Stacey Leyton
Barbara J. Chisholm
Danielle Leonard
Connie K. Chan
Colin Clemente Jones
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
cchan@altber.com
cjones@altber.com

By: *<u>/s/ Stacey Leyton</u>*

*Attorney for Plaintiffs-Appellees*

Norman L. Eisen
Tianna Mays
Pooja Chaudhuri
Jacob Kovacs-Goodman
Elizabeth Westfall
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE #15180
Washington, DC 20003 (202) 601-8678
(202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org
pooja@democracydefenders.org
jacob@democracydefenders.org
elizabeth-contract@democracydefenders.org

By: *<u>/s/ Norman L. Eisen</u>*

*Attorney for Plaintiffs-Appellees*

Jared Fletcher Davidson
PROTECT DEMOCRACY PROJECT
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
jared.davidson@protectdemocracy.org

Naomi Gilens
Anna Dorman
Ori Lev
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave. NW, Suite #163
Washington, DC 20006
(202) 579-4582
naomi.gilens@protectdemocracy.org
Anna.dorman@protectdemocracy.org
ori.lev@protectdemocracy.org

Benjamin L. Berwick
15 Main Street, Suite 312
Watertown, MA 02472
Tel.: (202) 579-4582
ben.berwick@protectdemocracy.org

By: */s/ Jared Fletcher Davidson*

*Attorney for Plaintiffs-Appellees*

Steven K. Ury
SERVICE EMPLOYEES
INTERNATIONAL UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

By: */s/ Steven K. Ury*

*Attorney for Plaintiffs-Appellees*

Teague Paterson
Matthew Blumin
Georgina Yeomans
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org
GYeomans@afscme.org

By: *<u>/s/ Teague Paterson</u>*

*Attorney for Plaintiffs-Appellees*

Stuart Naifeh
John S. Cusick
Brittany Carter
NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006

I. Sara Rohani
Hayley Hahn
Victor Olofin
NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.
700 14th Street N.W., Ste. 600
Washington, DC 20005
snaifeh@naacpldf.org

By: *<u>/s/ Stuart Naifeh</u>*

*Attorney for Plaintiffs-Appellees*

## FILER'S ATTESTATION

Pursuant to Circuit Rule 25-5(e), the filer attests that all other signatories to this document concur in the content of, and have authorized, this filing.

Dated: November 3, 2026

*/s/ Stacey M. Leyton*
Stacey M. Leyton